N. Lekas Corporation, Appellant-Respondent, *v.* Travelers Insurance Company, Respondent-Appellant.

First Department, December 20, 1955.

*Howard M. Lester* of counsel (*Emile Z. Berman,* attorney), for appellant-respondent.

*John G. Donovan* of counsel (*Galli & Locker,* attorneys), for respondent-appellant.

BERGAN, J. Plaintiff corporation is the lessee of a warehouse and loft building at 394 Greenwich Street, Manhattan. The Travelers Insurance Company issued in 1949 a policy to the plaintiff which in its general clause of coverage insured plaintiff against liability for damages because of bodily injury caused by accident arising from "The ownership, maintenance or use, for the purposes stated in the declarations, of the premises, and all operations during the policy period which are necessary or incidental to such purposes." The "premises" are defined in the policy as including the "structures thereon and the ways immediately adjoining". One of the specific exclusions was that "This policy does not apply * * * to elevators at the premises".

While this policy was in effect on July 12, 1950, Kaziemiera Kostka, an employee of one of the tenants of plaintiff fell through an unguarded elevator shaft in the building and was injured. Prompt notice of this injury was given to defendant. The next day plaintiff wrote to its insurance broker that the accident had taken place "in the shaft of the elevator"; and the following day the broker sent defendant a copy of plaintiff's letter.

Plaintiff on August 22d made out on the company's form a report which stated that the accident was caused by the injured person's having opened the elevator door without looking in to observe that the elevator was not at that floor, and having fallen into the shaft. On August 24th defendant wrote to plaintiff's broker stating that its investigation showed that the accident happened " through operations of an elevator at assured's premises ". It stated that " we regret we cannot give the matter further attention ". The report of accident was returned with this letter.

In due course the injured person sued the plaintiff, the owner of the building, and an officer of both corporations. This was in January, 1951. The complaint alleged that this plaintiff and the other defendants maintained and controlled " a certain elevator ", and set forth facts, all attributable to the operation and maintenance of the elevator upon which the action for negligence was predicated. This complaint was not sent to the defendant at the time of the service; and there seems to have been no further communication between the parties on the subject until 1953.

In April, 1952, the plaintiff in the negligence action served an amended bill of particulars which may be read as broadening, somewhat, the claim of negligence charged; and stated, among other grounds of negligence, that defendants " failed to have proper light ". This particularization was, however, closely related to the maintenance and operation of the elevator which was dealt with extensively in the bill. The amended bill of particulars was not then sent to defendant.

When the negligence case reached the calendar for trial the plaintiff in that action gave notice on January 14, 1953, that he would move upon the trial to amend and supplement the complaint and bills of particulars by adding to the amended bill of particulars, after the words " failed to have proper light " the words: " That this failure includes the hallway area adjacent to the elevator shaft which was left dark and unlighted and so maintained ". The notice included other matters of amendment and enlargement.

On the same day that this notice was received plaintiff's attorney sent a copy of the complaint, the amended bill of particulars and the notice further to amend, to the defendant with the statement of his view that the claim as thus asserted in the proposed amendments was within the coverage of the policy and " we are herewith formally calling upon you to take over this defense and to indemnify N. Lekas Corporation ".

Defendant returned the papers with the comment that the plaintiff " has never asked us to defend the case and also has never turned over any pleadings to us until your letter of January 14th, which is not in accordance with Condition 9 of the policy ".

Defendant's adjuster, who signed the letter, expressed the opinion that " even with " the new allegations, the cause was not within the coverage of the policy. Condition 9 to which reference is made provides that if suit is brought the assured " shall immediately forward to the company every demand, notice, summons or other process received ".

On January 23d plaintiff's attorney again wrote to defendant expressing the opinion that condition 9 was not a reason for a failure to assume the defense of the action in view of the statement that had been made by the defendant on August 24, 1950, that " We regret we cannot give the matter further attention ". The letter again called on defendant to take over the defense and stated the date and part of the court at which it would be tried; and when the trial was adjourned, plaintiff gave defendant further written notice of the new date and place of trial.

The case was tried before the court without a jury and judgment was granted against both corporations, the lessor as well as this plaintiff, in the sum of $17,300. The complaint against the individual defendant was dismissed. In the process of decision the court made a finding that the two acts of negligence charged in the complaint had conjoined to cause the injuries. Said the court: " The specific acts of negligence charged in the complaint and the bill of particulars, namely, absence of light in the premises and the unattended elevator were both shown to have been responsible for the accident ". The total amount of the judgment as entered against the two corporations was $17,509. Half of it was paid by the carrier for the lessor; plaintiff satisfied the other half by paying the sum of $8,754.50 and claims that it incurred for counsel fees and other expenses for the defense of the action the sum of $3,269.36. It seeks recovery here of $12,023.86.

On this state of the record both sides moved for summary judgment. Except for the dismissal of one of plaintiff's causes of action, not now material, the Special Term denied the two motions for summary judgment. On the record before us we think that this was a proper exercise of discretion; and the court was not required to determine summarily the issues presented. If it be assumed that defendant is not entitled to judgment as

a matter of law, there are sufficient factual issues presented to justify a trial.

One question is whether there was a waiver by defendant of the failure of plaintiff to comply literally with the requirement that the complaint and other papers in the action be immediately sent to defendant. Another is whether, if there was a waiver, the sending of the papers in January, 1953, was timely; and also if there was a waiver, whether the notice and the time of notice were sufficient to bind the insurance company by the judgment in the negligence action.

There could develop also a need to determine as a matter of fact on the trial between these parties whether this accident came within the coverage of the policy. Such a question might be determined either from an examination of the record of proof on the first trial, which has been filed with us, or by other proof. Its competency could rest on a finding by the judge hearing the case, that the course of conduct of the parties before the trial of the negligence action was such that the judgment there is not conclusively binding on the defendant; but binding only if it were found as between these parties that it was based on a risk within the coverage.

Some of these questions, of course, would be determined on the trial as matters of law in the factual context of the record as it develops; but some of them seem to us to present questions of fact. If it is determined, for example, that the defendant was required to defend the negligence action whether or not it became responsible for the judgment, the value of the legal fees and expenses claimed by plaintiff to have been incurred in defending itself would be a triable issue.

If there are any triable issues we are bound to affirm the orders; and even as a matter of discretion we would think that issues such as those raised here between assured and carrier could be determined with more satisfaction on plenary inquiry.

We turn then to the question whether defendant is entitled to a holding as a matter of law on this record that its policy did not cover the accident. It will be seen at once that in arguable areas of coverage where there has been conjunctive causation of the casualty, one element of cause within, and one without the policy, the ruling has frequently gone against the carrier; and this upon the common principle of construction favoring the assured in reading an instrument prepared by the insurer.

In *Tonkin* v. *California Ins. Co.* (294 N. Y. 326) the policy on a motor vehicle covered damage due to fire; but it expressly excepted collision from coverage, and amplified this by an

express condition that "loss caused by collision of the automobile with another object or by upset" was not covered (p. 328). While driving in traffic the assured noticed some smoke coming out of the dashboard; the smoke seems to have interfered with his vision; and in turning to the right to get out of traffic he had a collision with another car. The court held the policy covered the loss which was caused by the impact due to the collision.

In *Wagman* v. *American Fidelity & Cas. Co.* (304 N. Y. 490, 493) the policy covered anyone using a truck with the consent of assured and included loading and unloading as " 'use' ". It was held to cover a supervisory employee of shipper, not employed by the assured, who was walking across a sidewalk from the truck to a store to check some goods to be shipped and who collided with a pedestrian knocking her to the pavement.

The specific exclusion of "structural alterations" from policy coverage for the general maintenance or use of premises has been held not to prevent recovery in a borderline area where the work being done might be regarded as either ordinary repairs or "structural alterations". In *Hawkeye Cas. Co.* v. *Frazier* (183 F. 2d 465, 467) the United States Court of Appeals for the Tenth Circuit held that the work of putting on a new asbestos roof on a house, replacing old siding shingles and removing a porch were not "structural alterations" but could be regarded as repairs and hence within the coverage of the policy. (See, also, *Syracuse Malleable Iron Works* v. *Travelers Ins. Co.*, 182 App. Div. 742, affd. 230 N. Y. 532.)

Exclusions relating to aviation have been construed in the same direction. In *Hartol Prods. Corp.* v. *Prudential Ins. Co.* (290 N. Y. 44) the accidental death benefits provision of a life policy specifically excluded death resulting from "having been engaged in * * * aviation * * * as a passenger or otherwise" (p. 46). The court held death while riding as a passenger in a commercial airline came within the coverage and not the exclusion.

The court noted, significantly we think for the case before us, that in areas of doubtful construction, "the burden was on the defendant [the carrier] to establish that the words and expressions used not only are susceptible of" the construction urged by the carrier, "but that it is the only construction that can fairly be placed thereon" (p. 49).

Thus also, an exclusion of "Death as a result, directly or indirectly, of travel or flight in any species of air craft" was held not to prevent recovery under the policy where death

resulted from enemy fire while the assured was engaged as a member of the air forces on a plane in military action. (*Riche* v. *Metropolitan Life Ins. Co.,* 193 Misc. 557, 559.) A very similar treatment of an exclusion of loss from handling, use or condition of products sold by manufacturer after manufacturer had relinquished possession of them is to be observed in *Reed Roller Bit Co.* v. *Pacific Employers Ins. Co.* (198 F. 2d 1).

It is in the light of these and similar cases dealing with conjunctive causation of casualty, one element of which is included and the other excluded, that we must read the dictum in *Marcus* v. *United States Cas. Co.* (249 N. Y. 21, 25). There the policy excluded injuries sustained by reason of any elevator or shaft or hoistway used in its operation. The injured person opened the elevator door, mistaking it for a toilet, and fell in the shaft. The door was not misnamed; there was no name on it. There was no question of absence of light or other defect for which the insurer could conjunctively or otherwise be found to have assumed a liability.

The court indulged in the comment that " We cannot imagine that the parties in using these words understood that if a person fell down the shaft because the hallway was dark, the bodily injuries would be sustained by reason of the darkness, not because of the elevator shaft ". But there was no element of darkness in that case; nor is there anything about the decision to suggest that if the same carrier covered for absence of sufficient light and an absence of sufficient light were found to be one effective cause of the casualty, the exclusion clause would have excused the carrier. The cases on conjunctive causation in touching on exclusion clauses seem to point uniformly in quite a different direction.

On the other hand, as we have pointed out, the issues here are such that summary judgment ought not be granted against defendant on its agreement to indemnify; although there are cases in which it has been held that by a failure to defend after opportunity to do so has been afforded, the insurer is bound by the resulting judgment. (*Conner* v. *Reeves,* 103 N. Y. 527; *Mayor, Lane & Co.* v. *Commercial Cas. Ins. Co.,* 169 App. Div. 772; *Pow-Well Plumbing & Heating* v. *Merchants Mut. Cas. Co.,* 195 Misc. 251; cf. *Abrams* v. *Maryland Cas. Co.,* 303 N. Y. 698.)

The cause of action asserted by plaintiff here for the expenses of defending the action against it is somewhat more firmly grounded than the main cause for indemnity; but as to the amount of recovery, at least, there is a question of fact and a factual issue also may exist on the failure to send the pleadings

to defendant if that is not excused by defendant's early renunciation of any responsibility in the case. The defendant undertook by its policy to defend any action " alleging such injury * * * even if such suit is groundless, false or fraudulent ".

It has been said that " the duty to defend is broader than the duty to pay ". (*Goldberg* v. *Lumber Mut. Cas. Co.*, 297 N. Y. 148, 154.) (See, also, *Grand Union Co.* v. *General Acc., Fire & Life Assur. Corp.*, 254 App. Div. 274, 280, affd. 279 N. Y. 638; *Summer & Co.* v. *Phœnix Ind. Co.*, 265 App. Div. 911, and *Lee* v. *Ætna Cas. & Sur. Co.*, 178 F. 2d 750.) From the time that the proposed amendment to the bill of particulars was sent to defendant, at least, it had notice of a suit pleaded to come within its policy, whatever may be said of the effect of the failure to send it the earlier pleading.

The orders should be affirmed.

BOTEIN, J. (dissenting). We must not lose sight of the fact that this is an action upon a contract. The liability of defendant insurance company under this contract need not be coterminous with plaintiff's liability to the person injured upon its premises. By exception from coverage, as in this case, an insurance company and its insured may agree that certain portions of the insured's premises are excluded from the coverage of their contract of insurance.

The parties to an insurance contract may agree that its provisions will not cover any accident occurring inside an elevator shaft, irrespective of how many other elements of causation falling within the policy coverage may combine to cause the accident. That is exactly what the parties to this action agreed upon; and we may not impose upon the contract terms of common-law tort liabilities obviously never contemplated by the parties.

Of course, the insurance company must word such coverage exclusions, like all other policy provisions, so clearly and unambiguously that the average businessman may readily understand them (*Bird* v. *St. Paul Fire & Marine Ins. Co.*, 224 N. Y. 47, 51; *Silverstein* v. *Metropolitan Life Ins. Co.*, 254 N. Y. 81; *Hartol Prods. Corp.* v. *Prudential Ins. Co.*, 290 N. Y. 44, 49). The exclusion in this case, however, could not be overlooked by any businessman who bothered even to glance at his policy. The first clause on the first page provided that " [t]he insurance afforded is only with respect to such and so many of the following coverages and divisions thereunder as are indicated by specific premium charge or charges." The only

premium charge indicated on the policy was for the hazard " 1. Premises — Operations ". Alongside the hazard — " 2. Elevators " — was the letter " x ", indicating no premium was charged for the elevator hazard. In the next column appeared the following: " The letter ' X ' in any premium space shall mean that insurance is not afforded with respect to the hazard stated in the division opposite thereto." All of these exclusory provisions were not tucked away somewhere in fine print, but prominently displayed on the first page, in the box containing the limits of liability and premium charges — the first features of a policy that a businessman would be likely to examine.

Condition 4 reads as follows: " Elevator Defined. The word ' elevator ' wherever used in this policy shall mean any hoisting or lowering device operated between floors or landings and all appliances thereof including any car, platform, shaft, hoistway, stairway, runway, power equipment and machinery." There can be no question, therefore, that injuries sustained in a shaft or hoistway are excluded from the policy coverage.

Viewing this contract in such a perspective, the parties clearly intended that defendant did not undertake to indemnify plaintiff for the results of any accident occurring in an elevator or elevator shaft, irrespective of other contributing or concurring proximate causes. Elevator shafts are deep holes, and it is common knowledge that deep holes in building floors are dangerous. Insurance rates reflect claim experience, and such experience dictates an additional premium when dangerous elevator shafts are to constitute part of the insured area. The policy unmistakably informed plaintiff that if it wished to be insured against such a notorious hazard it would have to pay an additional premium. It chose not to pay and got exactly what it contracted for — no insurance against the claim in issue here.

To expand the coverage to include a conjunctive cause of the accident is unrealistic and imparts an esoteric shading into the contract never intended by the parties. In fact, the assured itself assumed for two and one-half years following the accident that it was not covered by insurance. The parties when making the contract knew that the elevator shaft constituted a separately insurable hazard, not to be splintered by such considerations as whether the injured person fell down it partly because of another insurable act of negligence. The reality of the hazard against which plaintiff chose not to buy insurance coverage is best evidenced by the fact that if the injured person had opened the door to a closet instead of an elevator shaft there would have been no accident.

Plaintiff likewise is not entitled to the costs of defending the original suit. While the duty to defend is broader than the duty to pay, at no time did the pleadings in the insured person's action allege a cause of action within the coverage of the policy.

To hold that there is any issue of fact as to coverage for the injuries resulting from the accident as alleged in the complaint " would virtually be making a new contract for the parties " (*Marcus* v. *United States Cas. Co.*, 249 N. Y. 21, 25). And it is apparent that the Court of Appeals designedly extended itself in the *Marcus* case to express the so-called dictum quoted in the majority opinion.

The order of December 2, 1953, should be modified to the extent of granting defendant's motion for summary judgment dismissing the first cause of action and otherwise affirmed. The order of October 28, 1953, denying plaintiff's motion for summary judgment, should be affirmed.

RABIN and COX, JJ., concur with BERGAN, J.; BOTEIN, J., dissents in opinion, in which PECK, P. J., concurs.

Orders affirmed.