[Civ. No. 12313. Fourth Dist., Div. Two. Mar. 26, 1973.]

GULF INSURANCE COMPANY, Plaintiff and Respondent, v.
DAVID L. EDGERLY, a Minor, etc., et al., Defendants and Appellants.

COUNSEL

Byhower, Longley & Petherbridge, Richard W. Petherbridge. Victor E. Kaplan and Jack Tenner for Defendants and Appellants.

C. A. Falconer and David Hyatt for Plaintiff and Respondent.

OPINION

**TAMURA, J.**—This is an action for declaratory relief to determine whether a homeowners policy of insurance issued by plaintiff to defendants Hendrick and Irene Lether covered a claim for damages for personal

injuries sustained by defendant David Edgerly when he was struck by a minibike operated by the Lethers' minor son. Following trial the court rendered judgment for plaintiff decreeing that the policy did not cover the claim and that plaintiff had no obligation to defend a pending action in the Superior Court of Orange County brought by David Edgerly against the Lethers. Defendants appeal from the judgment.

The facts pertinent to the appeal are as follows:

In 1967 the Lethers purchased a homeowners policy of insurance issued by plaintiff covering the family home for a period of three years. The policy also provided comprehensive personal liability coverage to specified limits for bodily injury and property damage resulting from an accident or occurrence covered by the policy. Under "Special Exclusions" the policy provided in pertinent part that comprehensive liability coverage shall not apply "to the ownership, maintenance, operation, use, loading or unloading of (1) automobiles or midget automobiles while away from the premises or the ways immediately adjoining. . . ."

The "Supplementary Definitions" included the following:

"(e) 'Automobile' means a land motor vehicle, trailer or semitrailer; but the term 'automobile' does not include, except while being towed by or carried on an automobile, any of the following: any crawler or farm-type tractor, farm implement or if not subject to motor vehicle registration, any equipment which is designed for use principally off public roads; '

"(f) 'Midget automobile' means a land motor vehicle of the type commonly referred to as a 'midget automobile,' 'kart,' 'go-kart,' 'speedmobile' or by a comparable name, whether commercially built or otherwise;"

Approximately two years after the purchase of the homeowners policy, Mr. Lether bought a minibike for his minor son, Ronald. A few days later Ronald, while riding the vehicle on a vacant field across the street from his home, struck and injured David Edgerly. David, through his father as guardian ad litem, sued the Lethers for damages for the injuries sustained in the accident. The Lethers demanded that plaintiff defend the action and pay any judgment which might be rendered against them. Plaintiff's action for declaratory relief ensued.

The Lether minibike was a two-wheeled vehicle powered by a two-horse-power engine. It had a clutch, brake and hand throttle but was not equipped with turn indicators, headlights or a taillight. Mr. Lether testified the "minibike" was not intended for use on the road and that he never attempted to register it with the Department of Motor Vehicles.

Defendants called Paul Lewellwyn, a minibike and go-kart shop owner, who testified that the terms "kart" and "go-kart" refer to four-wheeled off-road vehicles; that a "midget automobile" is slightly larger and more powerful than a "go-kart" and has four wheels; and that a minibike has only two wheels. He was unfamiliar with the term "speedmobile." There was evidence that everyone who operated the Lether vehicle and vehicles of the same type referred to them as "minibikes."

Mr. Lether testified he purchased the homeowners policy along with his house; he casually read the policy when he received it and shortly thereafter went to the insurance agency representing plaintiff to have it explained. At that time he did not own a minibike and did not then, nor at any time prior to the accident, discuss whether or not a minibike would be covered under the policy. The agent discussed generally the scope of coverage and promised to mail Lether a pamphlet containing further explanation of the coverage provided by a homeowners policy. Within a few days Lether received from the insurance agency an illustrated pamphlet purporting to depict and explain hazards covered by a homeowners policy. One was an illustration of a golfing accident accompanied by a statement: "OFF PREMISES ACCIDENT—pays claims arising from personal acts, sports activities, etc. (Excluding liability resulting from operation of automobiles, aircraft, and large boats.)"

Plaintiff's agent testified that the yearly premium charged the Lethers for their homeowners policy was $39 and, over objection, was permitted to testify that coverage to similar limits under a liability policy for a minibike of the size and type owned by the Lethers would cost $71.50. However, the agent testified that his company did not write such a policy.

The court found that a "minibike" was a "midget automobile" as defined by the policy and that the accident did not occur on the insured's property or premises or the ways immediately adjoining. He therefore concluded that there was no insurance coverage under the policy.

Defendants attack the sufficiency of the evidence to support the findings of the trial court. They urge that the term "midget automobile" as defined in the policy is vague, ambiguous and uncertain, and that consequently the court's finding is contrary to the principle that ambiguities in an insurance policy must be resolved against the insurer. They also contend that the finding that the accident did not occur on a way immediately adjoining the insured's property or premises is not supported by the evidence.

The question whether the claim was subject to the special exclusion pertaining to accidents occurring "while away from the premises or the ways

immediately adjoining" turns not only on where the accident occurred but also on whether a minibike is an "automobile" or "midget automobile" within the meaning of the policy. If the minibike was not an "automobile" or a "midget automobile" as those terms are defined by the policy, the fact that the accident did not occur on the premises or ways immediately adjoining would not exclude coverage. We therefore address ourselves first to that question.

Preliminarily we review the principles by which we must be governed in reviewing the trial court's resolution of that issue. The interpretation of a written instrument is solely a judicial function unless it turns upon the credibility of extrinsic evidence. (*Parsons* v. *Bristol Development Co.,* 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) A reviewing court is not bound by the trial court's construction of a contract based solely upon the terms of the written instrument where there is no conflict in the extrinsic evidence. (*Parsons* v. *Bristol Development Co., supra; Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825].) "The possibility that conflicting inferences can be drawn from uncontroverted evidence does not relieve the appellate court of its duty independently to interpret the instrument, it is only when the issue turns upon the credibility of extrinsic evidence, or requires resolution of a conflict in that evidence, that the trial court determination is binding." (*Estate of Dodge,* 6 Cal.3d 311, 318 [98 Cal.Rptr. 801, 491 P.2d 385].) ▮ Since the record in the instant case discloses no conflict in the extrinsic evidence or issues of credibility, it becomes our responsibility to make an independent interpretation of the policy (*Estate of Dodge, supra,* 6 Cal.3d 311, 318) and in discharging that duty we may utilize the extrinsic evidence if we find that the policy is "ambiguous." (*Estate of Dodge, supra,* p. 318.)

It is evident that the Lether minibike, if it is to be excluded from coverage under the policy must come within the definition of a "midget automobile." The term "automobile" as defined in the policy does not include (if not subject to motor vehicle registration) "any equipment which is designed for use principally off public roads." The uncontroverted evidence was that the Lether minibike was designed for use off public roads; it had no taillight, headlight, or turn signal indicators. It could not have been legally operated on the road.[1] As an off road vehicle, at the time of the

---

[1]Vehicle Code section 24600 provides in relevant part: "During darkness every motor vehicle which is not in combination with any other vehicle and every vehicle at the end of a combination of vehicles shall be equipped with lighted tail-lamps mounted on the rear. . . ."

Vehicle Code section 24952 provides in pertinent part: "A lamp-type turn signal

accident the minibike was not subject to motor vehicle registration. (*Yosemite Park & Curry Co.* v. *Dept. of Motor Vehicles,* 177 Cal.App.2d 448, 454 [2 Cal.Rptr. 431]; 41 Ops.Cal.Atty.Gen. 129, 130.[2]) It thus was not an "automobile" as contemplated by the policy.

Analyzing the policy's definition of the term "midget automobile," we note first that while the term "land motor vehicle" may be broad enough to include a minibike, it is restricted in scope by the qualifying phrase "of the type *commonly referred to* as a 'midget automobile,' 'kart,' 'go-kart,' 'speed-mobile,' or by a comparable name. . . ." (Italics supplied.) "Minibike" is not included among the enumerated terms. The words "a comparable name" must be deemed to refer to the type of generic vehicles described by the colloquialisms "midget automobile," "kart," "go-kart," and "speed-mobile" and cannot be utilized to ensnare something not anticipated by those terms.

The foregoing analysis reveals the ambiguity in the meaning of the term "midget automobile" as defined by the policy. It is apparent that the term is reasonably susceptible of more than one interpretation. We may therefore properly consider the extrinsic evidence in arriving at an independent interpretation of the term.

█ In this context, the uncontroverted testimony of Mr. Lewellwyn, a go-kart and minibike shop owner for many years, is especially pertinent. His testimony was clearly relevant and therefore properly admitted to prove a meaning to which the terms used in the policy were reasonably susceptible. (*Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.,* 69 Cal.2d 33, 37 [69 Cal.Rptr. 561, 442 P.2d 641]; *Delta Dynamics, Inc.* v. *Arioto,* 69 Cal.2d 525, 528 [72 Cal.Rptr. 785, 446 P.2d 785].) █ He testified that "kart," "go-kart," and "midget automobile" while descriptive

---

shall be plainly visible and understandable in normal sunlight and at nighttime from a distance of at least 300 feet to the front and rear of the vehicle. . . ."

Vehicle Code section 24400 provides: "During darkness, every motor vehicle other than a motorcycle, shall be equipped with at least two lighted headlamps, with at least one on each side of the front of the vehicle, and, except as to vehicles registered prior to January 1, 1930, they shall be located directly above or in advance of the front axle of the vehicle. The headlamps and every light source in any headlamp unit shall be located at a height of not more than 54 inches nor less than 24 inches."

Mr. Lether testified that the minibike was not intended for road use.

[2]In 1971 the Legislature passed the Chappie-Z'berg Off-Highway Motor Vehicle Law of 1971, Vehicle Code section 38000 et seq. (Stats. 1971, ch. 1816, approved Dec. 22, 1971, operative July 1, 1972) which requires certain off road vehicles to display an identification plate or device issued by the Department of Motor Vehicles.

of vehicles that vary slightly in some particulars, all describe four-wheeled vehicles whereas "minibike" commonly refers to a two-wheeled vehicle. We find the distinction important. If plaintiff had intended a two-wheeled motor vehicle to be excluded from coverage through the use of the term "midget automobile," it should have clearly so stated. (*Gray.* v. *Zurich Insurance Co.,* 65 Cal.2d 263, 269 [54 Cal.Rptr. 104, 419 P.2d 168].) Instead it chose to limit its obligations through the use of terms that, viewed most charitably to plaintiff, can only be characterized as ambiguous.

It is settled that where policy provisions are reasonably susceptible to different interpretations, doubts must be resolved against the insurer. (*Universal Underwriters Ins. Co.* v. *Gewirtz,* 5 Cal.3d 246, 250 [95 Cal. Rptr. 617, 486 P.2d 145]; *Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263, 269; *Continental Cas. Co.* v. *Phoenix Constr. Co.,* 46 Cal.2d 423, 437 [296 P.2d 801].) "In particular, provisions relating to exclusions or exceptions from the performance of the basic, underlying obligation are construed strictly against the insurer and liberally in favor of the insured." (*Paramount Properties Co.* v. *Transamerica Title Ins. Co.,* 1 Cal.3d 562, 569 [83 Cal.Rptr. 394, 463 P.2d 746]; *Brinkmann* v. *Liberty Mutual etc. Ins. Co.,* 63 Cal.2d 41, 45 [45 Cal.Rptr. 8, 403 P.2d 136]; *Freedman* v. *Queen Ins. Co.,* 56 Cal.2d 454, 457 [15 Cal.Rptr. 69, 364 P.2d 245]; *Arenson* v. *Nat. Automobile & Cas. Ins. Co.,* 45 Cal.2d 81, 83 [286 P.2d 816].) The ambiguity of the term "midget automobile" as used in the exclusionary clause must be construed against the insurer.

Our view of the exclusion is not altered by the price differential existing between the homeowners policy and a separate minibike liability policy. To be sure such a differential is a factor to be considered in attempting to decipher the reasonable expectations of coverage of the parties. (*Herzog* v. *National American Ins. Co.,* 2 Cal.3d 192, 197 [84 Cal.Rptr. 705, 465 P.2d 841].) However, we cannot say that the differential here was so large that the parties could not reasonably have expected coverage. Unlike an automobile liability policy, premium for which may run into hundreds of dollars, the evidence here indicates that a minibike liability policy, if one were available, would cost substantially less than $100 per year, and that the differential between it and the homeowners policy is less than $35 per year. Such a relatively minor cost differential casts little light on the reasonable expectation of the parties.

Resolving the ambiguity against the insurer, as we must, we conclude that a "minibike" is not a "midget automobile" within the meaning of the policy and that coverage for the accident in question was not excluded.

In view of the foregoing conclusion, we need not discuss defendants' remaining contentions.

Judgment is reversed.

Kerrigan, Acting P. J., and Kaufman, J., concurred.