[Sac. No. 7973. In Bank. Sept. 25, 1973.]

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
et al., Plaintiffs and Appellants, v.
WAYNE E. PARTRIDGE et al., Defendants and Respondents.

COUNSEL

Rich, Fuidge, Dawson, Marsh, Morris, Sanbrook & Grove and Chester Morris for Plaintiffs and Appellants.

Jones & Weldon, Charles R. Weldon and Leonard Sacks for Defendants and Respondents.

OPINION

TOBRINER, J.—The instant case presents a somewhat novel question of insurance coverage: when two negligent acts of an insured—one auto-related and the other non-auto-related—constitute concurrent causes of an accident, is the insured covered under both his homeowner's policy and his automobile liability policy, or is coverage limited to the automobile policy? State Farm Insurance Company (State Farm), the insurer which issued both policies at issue in this case,[1] brought this declaratory judgment

---

[1] The policies were actually issued by two separate corporate entities, State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company, but for convenience we shall refer to the insurers as simply "State Farm" or "the insurer."

action requesting a determination-as to which one, or both, of its policies afforded coverage for the accident in question.

In the trial court the insurer, relying on an exclusionary provision in the homeowner's policy which withheld coverage for injuries "arising out of the use" of a motor vehicle, contended that coverage was only available under the automobile liability policy. Defendants,[2] on the other hand, argued that since two independent negligent acts, one covered by the homeowner's policy and one by the automobile policy, jointly caused the accident, coverage should be afforded by both policies. After a nonjury trial, the court agreed with defendants and entered judgment holding the insurer liable under both policies. State Farm appeals from that judgment.

As discussed below, we have concluded that the trial court decision, finding liability under both insurance policies should be affirmed. Initially, we shall point out that coverage is unquestionably available under the automobile liability policy since the instant accident bore some causal relationship to the use of the insured vehicle. Thereafter, we shall explain that although the homeowner's policy excluded injuries "arising out of the use" of an automobile, such exclusion does not preclude coverage when an accident results from the concurrence of a non-auto-related cause and an auto-related cause. ■ The comprehensive personal liability coverage of the homeowner's policy affords the insured protection for liability accruing generally from non-auto-related risks. Whenever such a non-auto risk is a proximate cause of an injury, liability attaches to the insured, and coverage for such liability should naturally follow. Coverage cannot be defeated simply because a separate excluded risk constitutes an additional cause of the injury. We therefore conclude that the trial court properly found that coverage is available under both of the policies in question.

We begin our analysis with a brief review of the facts of the case, which are not in dispute. The circumstances resulting in the accident at issue reveal an instance of what can only be described as blatant recklessness. Wayne Partridge, the named insured of the two insurance policies issued by State Farm, was a hunting enthusiast who owned a .357 Magnum pistol. Prior to the date of the accident, Partridge filed the trigger mechanism of his pistol to lighten the trigger pull so that the gun would have "hair trigger action"; the trial court specifically found this modification of the gun to be a negligent act, creating an exceptionally dangerous weapon.

---

[2]The insurer joined both Wayne Partridge, the insured, and Vanida Neilson, the injured individual, as defendants in the declaratory judgment action. For convenience, we shall refer' to these parties as either "defendants" or "the insured."

On the evening of July 26, 1969, Partridge and two friends, Vanida Neilson and Ray Albertson, were driving in the countryside in Partridge's four-wheel drive Ford Bronco. With Vanida sitting between them in the front seat, Partridge and Albertson hunted jackrabbits by shooting out of the windows of the moving vehicle; Partridge was using his modified .357 Magnum. On the occasion in question here, Partridge spotted a running jackrabbit crossing the road, and, in order to keep the rabbit within the car's headlights, Partridge drove his vehicle off the paved road onto the adjacent rough terrain. The vehicle hit a bump, the pistol discharged and a bullet entered Vanida's left arm and penetrated down to her spinal cord, resulting in paralysis. At the time of the accident, Partridge was either holding the gun in his lap or resting it on top of the steering wheel pointed at Vanida.

Thereafter, Vanida filed a personal injury action against Partridge seeking damages of $500,000. During settlement discussions between Vanida and State Farm, a controversy arose as to whether coverage was available under both Partridge's automobile liability policy and his homeowner's policy, or, if under just one policy, which one; the automobile policy contained a $15,000 limit, the homeowner's policy a $25,000 limit. Pursuant to these negotiations, State Farm agreed immediately to pay Vanida $15,000 and to institute the present declaratory judgment action to determine which of the policies provided coverage for the accident in question. Both parties agreed to be bound by the final determination (including appeal) in this action, and, as part of the settlement, Vanida agreed not to pursue further her action against Partridge;[3] the insurer, in turn, agreed to pay the full amount of all insurance policies found applicable, waiving any right to contest the monetary value of Vanida's damages.

State Farm then commenced the present action, setting out in its complaint the undisputed facts related above, and attaching the two relevant insurance policies issued to Partridge. The "Automobile Policy" contains a typically broad coverage or insuring clause, affording coverage for bodily injuries "caused by accident arising out of the . . . use . . . of the owned motor vehicle."[4] The "Homeowner's Policy," in addition to affording the

---

[3]The record does not disclose the reason for Vanida's agreement to this condition, but the trial court surmised that the most probable explanation was that any personal judgment against Partridge would be uncollectible.

[4]The coverage clause of the "Automobile Policy" provides in relevant part: "[The company] agrees . . . [t]o ·pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of (A) bodily injury sustained by other persons . . . caused by accident arising out of the ownership, maintenance or use, including loading or unloading, of the owned motor vehicle. . . ."

normal coverage against fire and theft, contains a common comprehensive "personal liability" provision, which generally covers the named insured for *all* personal liability not falling within specific exclusionary provisions of the policy.[5] The broad coverage clause of this "personal liability" section is followed by a lengthy list of "exclusions"; the exclusionary clause relevant to this case excludes coverage for "bodily injury . . . arising out of the . . . use of . . . any motor vehicle," but excepts from this exclusion injuries arising from nonregistered vehicles kept exclusively on the "residence premises."[6]

As noted above, State Farm contended that because the use of the car played some causal role in the accident in question, the injuries "arose out of the use of the car" within the meaning of the homeowner's exclusionary provision, and thus that only the automobile policy provided coverage for the injuries. Defendants claimed, in response, that both the filing of the trigger mechanism and the negligent driving were concurrent causes of the accident, and argued that under such circumstances both policies were applicable.

The trial court first found that the insured, Partridge, had been negligent both in modifying the gun by filing its trigger mechanism and in driving his vehicle off the paved road onto the rough terrain, and that these two negligent acts were independent, concurrent proximate causes of Vanida's injuries. The court then concluded that both policies issued by State Farm to Partridge applied to the accident and that Vanida was entitled to recover under both.

The court's reasoning is clearly revealed in its memorandum opinion: "In the Court's opinion each of the policies affords different coverage for distinct and different acts of negligence of the insured which resulted in injuries to a third person. [¶] It should make no difference that Partridge

---

[5]The coverage clause of the "Personal Liability" section of the "Homeowner's Policy" provides in relevant part: "This Company agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an occurrence." "Occurrence" is defined broadly by the policy as "an accident, including injurious exposure to conditions, which results, during the policy term, in bodily injury or property damage."

[6]The applicable exclusionary clause reads: "This policy does not apply: 1. Under Coverage E-Personal Liability . . . (a) To Bodily Injury or Property Damage Arising Out of the Ownership, Maintenance, Operation, Use, Loading or Unloading of: . . . (2) Any Motor Vehicle Owned or Operated By, or Rented or Loaned to, any Insured; But this subdivision (2) does not apply to bodily injury or property damage occurring on the residence premises if the motor vehicle is not subject to motor vehicle registration because it is used exclusively on the residence premises or kept in dead storage on the residence premises. . . ."

was the owner-driver and insured under the automobile liability policy and was also the insured under the homeowner's liability policy. There were two separate, distinct and different acts of negligence committed by Partridge, one of which was entirely disconnected with the use of a motor vehicle and the other while using a motor vehicle . . . [B]oth proximately and concurrently contributed to [Vanida's] injuries and therefore both policies should afford coverage." State Farm now appeals from this decision.

On this appeal we begin from the established rule that since the underlying facts are not in dispute " 'it is the duty of the appellate court . . . to make its own independent determination of the meaning of the language used in the instrument[s] under consideration.' [Citations.]" (*Bareno* v. *Employers Life Ins. Co.* (1972) 7 Cal.3d 875, 881 [103 Cal.Rptr. 865, 500 P.2d 889]; see, e.g., *Williams* v. *American Cas. Co.* (1971) 6 Cal.3d 266, 271 [98 Cal.Rptr. 814, 491 P.2d 398]; *Faus* v. *City of Los Angeles* (1967) 67 Cal.2d 350, 360 [62 Cal.Rptr. 193, 431 P.2d 849].) We turn first to the automobile liability policy.

As noted above, the insuring clause of the automobile liability policy provided the typical coverage for bodily injuries "arising out of the . . . use . . . of the insured automobile."  ██  Past California cases have established beyond contention that this language of "arising out of the use," *when utilized in a coverage or insuring clause of an insurance policy,* has broad and comprehensive application, and affords coverage for injuries bearing almost *any* causal relation with the vehicle. As the Court of Appeal observed in *St. Paul Fire & Marine Ins. Co.* v. *Hartford Acc. & Indem. Co.* (1966) 244 Cal.App.2d 826, 831 [53 Cal.Rptr. 650]: "When employed in a public liability policy without restriction, words such as 'use' or 'using' have comprehensive scope. [Citations.]" (See also *Universal Underwriters Ins. Co.* v. *Aetna Ins. Co.* (1967) 249 Cal.App.2d 144, 150 [57 Cal.Rptr. 240].) Although our cases have not yet defined with absolute precision the requisite causal connection necessary to invoke such a coverage clause,[7] we have no doubt that in the instant case the role played by

---

[7] The California cases uniformly hold that the "use" of an automobile need not amount to a "proximate cause" of the accident for coverage to follow. (See, e.g., *St. Paul Fire & Marine Ins. Co.* v. *Hartford Acc. & Indem. Co.* (1966) 244 Cal. App.2d 826, 831 [53 Cal.Rptr. 650]; *City of Santa Monica* v. *Royal Indem. Co.* (1958) 157 Cal.App.2d 50, 55 [320 P.2d 136].) Some minimal causal connection between the vehicle and an accident is, however, required. "Although the vehicle need not be, in the legal sense, a proximate cause of the injury, the events giving rise to the claim must arise out of, and be related to, its use." (*Entz* v. *Fidelity & Casualty Co.* (1966) 64 Cal.2d 379, 385 [50 Cal.Rptr. 190, 412 P.2d 382].) The cases have not further refined the minimum requisite "causal connection" threshold (see *International Business Machines Corp.* v. *Truck Ins. Exch.* (1970) 2 Cal.3d 1026, 1031-1032, fn. 6 [89 Cal.Rptr. 615, 474 P.2d 431]; compare *Universal Underwriters Ins.*

the use of the car—constituting a substantial, and indeed, a proximate cause of the accident—was certainly sufficient to bring the present accident within the coverage of the automobile policy.[8] Neither party questions this conclusion.

■■ The controversy in this case, instead, focusses solely upon the applicability of the homeowner's policy to the instant accident. The insurer, pointing to the exclusionary clause of the homeowner's policy which denies coverage for injuries "arising out of the . . . use . . . of a motor vehicle," contends that since, as we have just determined, the instant accident "arose out of the use" of the vehicle for purposes of the automobile policy, the homeowner's policy necessarily excludes the accident. Emphasizing that the language of the homeowner's exclusionary clause is nearly identical to the language of the automobile policy's coverage clause, and that the same insurer drafted and issued both policies, State Farm argues that the policies were intended to be mutually exclusive and that no overlapping coverage can be permitted. For the reasons discussed below, we cannot agree.

Initially we point out that the insurer overlooks the fact that although the language in the two policies is substantially similar, past authorities have made it abundantly clear that an entirely different rule of construction applies to exclusionary clauses as distinguished from coverage clauses. ■■ Whereas coverage clauses are interpreted broadly so as to afford the greatest possible protection to the insured (see, e.g., *Continental Cas. Co. v. Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 437-438 [296 P.2d 801, 57 A.L.R.2d 914]; *Ensign v. Pacific Mut. Life Ins. Co.* (1957) 47 Cal.2d

---

Co. v. *Aetna Ins. Co.* (1967) 249 Cal.App.2d 144, 151 [57 Cal.Rptr. 240] with *Truck Ins. Exch.* v. *Webb* (1967) 256 Cal.App.2d 140, 148 [63 Cal.Rptr. 791]) but under the established authorities the automobile policy clearly covered the accident in the instant case.

[8]Our conclusion that the automobile policy provides coverage for the "shooting" accident in the instant case does not conflict with a long line of cases finding no automobile coverage for somewhat similar hunting accidents. In all such cases the courts have specifically noted that there was *absolutely no* causal relationship between the accidental firing of the gun and the use of the automobile. (See, e.g., *Azar* v. *Employers Casualty Company* (Colo. 1972) 495 P.2d 554, 555; *Brenner* v. *Aetna Insurance Company* (1968) 8 Ariz.App. 272 [445 P.2d 474, 478]; *United States Fidelity & G. Co.* v. *Western Fire Ins. Co.* (Ky. 1970) 450 S.W.2d 491, 492; *National Union F. Ins. Co. of Pittsburgh, Pa.* v. *Bruecks* (1966) 179 Neb. 642 [139 N.W.2d 821, 825-826].) Whenever circumstances reveal that the insured vehicle did bear some, albeit slight, causal connection with the shooting accident, courts have generally permitted recovery under automobile liability policies. (See, e.g., *Fidelity and Casualty Company of New York* v. *Lott* (5th Cir. 1960) 273 F.2d 500, 502; *Viani* v. *Aetna Insurance Company* (Idaho 1972) 501 P.2d 706, 714-716; *Allstate Insurance Company* v. *Valdez* (E.D.Mich. 1961) 190 F.Supp. 893, 896; *Dorsey* v. *Fidelity Union Casualty Co.* (Tex.Civ.App. 1932) 52 S.W.2d 775, 776-777.)

884, 888 [306 P.2d 488]), exclusionary clauses are interpreted narrowly against the insurer. (See, e.g., *Arenson* v. *Nat. Automobile & Cas. Ins. Co.* (1955) 45 Cal.2d 81, 83 [286 P.2d 816]; *Prickett* v. *Royal Ins. Co. Ltd.* (1961) 56 Cal.2d 234, 237 [14 Cal.Rptr. 675, 363 P.2d 907, 86 A.L.R.2d 711].) These differing canons of construction, both derived from the fundamental principle that all ambiguities in an insurance policy are construed against the insurer-draftsman, mean that in ambiguous situations an insurer might be found liable under both insurance policies. (Compare *Muller* v. *Sun Indemnity Co. of New York* (1950) 276 App.Div. 1028 [96 N.Y.S.2d 140] with *Great American Indem. Co. of New York* v. *Saltzman* (8th Cir. 1954) 213 F.2d 743 and *Assurance Company of America* v. *Bell* (1963) 108 Ga.App. 766 [134 S.E.2d 540].)

In view of the above approach the fact that an accident has been found to "arise out of the use" of a vehicle for purposes of an automobile policy is not necessarily determinative of the question of whether that same accident falls within a similarly worded exclusionary clause of a homeowner's policy. (See *Brenner* v. *Aetna Insurance Company* (1968) 8 Ariz.App. 272 [445 P.2d 474, 479]; cf. *Richland Knox Mutual Insurance Company* v. *Kallen* (6th Cir. 1967) 376 F.2d 360, 364.) ▪ As one commentator has recently observed: "It is clear that the expression 'use of an automobile' has different meanings under different circumstances and that, whenever possible, the courts will apply an interpretation which gives, but never takes away, coverage for the 'use' of an automobile, thereby causing automobile and non-automobile liability policies to overlap, notwithstanding the exclusion against the 'use' of an automobile in most non-automobile liability policies." (Marcus, *Overlapping Liability Insurance* (1967) 16 Def. L.J. 549, 559.)

▪ Although liability under the homeowner's policy could possibly be predicated upon the ambiguity of the exclusionary clause in the context of the instant accident, we need not rely upon this ground. The basis for such liability in this case is far stronger. Here the "use" of Partridge's car was not the sole cause of Vanida's injuries but was only one of two joint causes of the accident. Thus, even if we assume that the connection of the car with the accident is the type of non-ambiguous causal relationship which would normally bring the exclusionary clause into play, the crucial question presented is whether a liability insurance policy provides coverage for an accident caused jointly by an insured risk (the negligent filing of the trigger mechanism) and by an excluded risk (the negligent driving). Defendants correctly contend that when two such risks constitute concurrent proximate causes of an accident, the insurer is liable so long as one of the causes is covered by the policy.

In issuing the homeowner's policy to Partridge, State Farm agreed to protect the insured against liability accruing from non-auto-related risks. The insurer does not deny that Partridge's negligence in filing the trigger mechanism of his gun was a risk covered by the homeowner's policy; thus, if the gun had accidentally fired while the insured was walking down the street or running through the woods, the insurer admits that any resultant damage would clearly be covered by the policy. The insurer contends, nonetheless, that coverage is foreclosed here because the present accident arose out of the use of an automobile.

In the instant case, however, although the accident occurred in a vehicle, the insured's negligent modification of the gun suffices, in itself, to render him fully liable for the resulting injuries. Under these facts the damages to Vanida are, under the language of the homeowner's coverage clause, "sums which the Insured . . . [became] legally obligated to pay" because of the negligent filing of the trigger mechanism; inasmuch as the liability of the insured arises from his non-auto-related conduct, and exists independently of any "use" of his car, we believe the homeowner's policy covers that liability.

A hypothetical may serve to explain further our conclusion in this regard. If, after negligently modifying the gun, Partridge had lent it to a friend who had then driven his own insured car negligently, resulting in the firing of the gun and injuring of a passenger, both Partridge and his friend under traditional joint tortfeasor principles would be liable for the injury. In such circumstances, Partridge's personal liability would surely be covered by his homeowner's policy, and his friend's liability would be covered by automobile insurance. When viewed from this perspective, it can be seen that State Farm is presently attempting to escape liability under the homeowner's policy simply because, in the instant case, both negligent acts happened to have been committed by a single tortfeasor. In our view, this coincidence cannot defeat the insurer's obligation to indemnify the insured for liability arising from non-automobile risks.

In *Brooks* v. *Metropolitan Life Ins. Co.* (1945) 27 Cal.2d 305 [163 P.2d 689] this court faced a somewhat similar problem of determining insurance coverage in a case involving a multiplicity of causes. In *Brooks,* an insured, afflicted with debilitating cancer, was covered by an accident policy which excluded " 'injury . . . [or] death . . . caused wholly or partly, directly or indirectly, by disease or mental infirmity . . . .' " (27 Cal.2d at p. 306.)[9] The insured died in a fire, and the insurer sought to

---

[9]The exclusionary clause in *Brooks* was thus much broader than the provision at issue in the instant case, for the present policy gives absolutely no indication that coverage afforded for liability accruing from a covered risk is to be withdrawn when-

escape liability by establishing that a healthy individual would not have perished and thus that the insured's infirm condition did contribute to his death. While acknowledging that the insured's condition did contribute to his death, our court rejected the insurer's contention that coverage was unavailable simply because one of two joint causes of the death was an excluded risk. Chief Justice Gibson, writing for a unanimous court, declared that under such circumstances "the presence of preexisting disease or infirmity will not relieve the insurer from liability *if the accident is the proximate cause of death* . . . [R]ecovery may be had even though a diseased or infirm condition appears to actually contribute to cause the death if the accident sets in progress the chain of events leading directly to death, or if it is the prime or moving cause." (27 Cal.2d at pp. 309-310; italics added.) The court accordingly permitted recovery under the policy.

The rationale of the *Brooks* decision equally applies to the instant case. Here, as in *Brooks,* an insured risk (the modification of the gun) combined with an excluded risk (the negligent use of the car) to produce the ultimate injury. Although there may be some question whether either of the two causes in the instant case can be properly characterized as *the* "prime," "moving" or "efficient" cause of the accident[10] we believe that coverage under a liability insurance policy is equally available to an insured when-

---

ever an excluded risk constitutes an additional cause of the injury. In *Brooks,* however, despite the breadth of the language of the exclusionary clause, the court still held the policy applicable where the insured risk constituted the proximate cause of the injury.

[10] In *Sabella* v. *Wisler* (1963) 59 Cal.2d 21, 31-32 [27 Cal.Rptr. 689, 377 P.2d 889], the court, quoting 6 Couch on Insurance (1930) section 1466, restated the *Brooks* principle in terms of "efficient cause": " '[I]n determining whether a loss is within an exception in a policy, where there is a concurrence of different causes, the efficient cause—the one that sets others in motion—is the cause to which the loss is attributed, though the other causes may follow it, and operate more immediately in producing the disaster.' " In *Sabella,* although damage to an insured dwelling resulted from "settling," an excluded risk, the court found that the settling, in turn, had resulted directly from leakage from a broken sewer pipe, an insured risk; on these facts the "efficient cause" terminology was useful, because the court could find that the break in the pipe "set the other cause," settling, "in motion." (See also *Gillis* v. *Sun Ins. Office, Ltd.* (1965) 238 Cal.App.2d 408, 419-420 [47 Cal.Rptr. 868, 25 A.L.R.3d 564]; *Sauer* v. *General Ins. Co.* (1964) 225 Cal.App.2d 275 [37 Cal.Rptr. 303].)

In the instant case, however, the "efficient cause" language is not very helpful, for here both causes were independent of each other: the filing of the trigger did not "cause" the careless driving, nor vice versa. Both, however, caused the injury. In traditional tort jargon, both are concurrent proximate causes of the accident, the negligent driving constituting an intervening, but non-superseding, cause of the accident. (See *Werkman* v. *Howard Zink Corp.* (1950) 97 Cal.App.2d 418, 426 [218 P.2d 43].) If committed by separate individuals, both actors would be joint tortfeasors fully liable for the resulting injuries. Moreover, the fact that both acts were committed by a single person does not alter their nature as concurrent proximate causes. (Cf. *Flournoy* v. *State of California* (1969) 275 Cal.App.2d 806, 811 [80 Cal.Rptr. 485].)

ever an insured risk constitutes simply *a* concurrent proximate cause of the injuries.[11] That multiple causes may have effectuated the loss does not negate any single cause; that multiple acts concurred in the infliction of injury does not nullify any single contributory act.

The case of *Hughes* v. *Potomac Ins. Co.* (1962) 199 Cal.App.2d 239 [18 Cal.Rptr. 650] supports this conclusion. In *Hughes* the trial court found that a landslide was caused by ground water from rainfall, a covered risk, rather than by overflow from a river, an excluded risk. The Court of Appeal affirmed, declaring that even if the trial court had erred in finding the ground water to be the sole source of the landslide, the insurer would still be liable for " '[i]t has been held that when two causes join in causing an injury, one of which is insured against, the insured is covered by the policy. . . .' (*Zimmerman* v. *Continental Life Ins. Co.* (1929) 99 Cal.App. 723, 726 [279 P. 464].)" (199 Cal.App.2d at p. 244.) (See also *Gulf Portland Cement Co.* v. *Globe Indemnity Co.* (5th Cir. 1945) 149 F.2d 196, 198; *N. Lekas Corporation* v. *Travelers Insurance Co.* (1955) 1 App.Div.2d 15 [147 N.Y.S.2d 60, 63-64].)

In the instant case the trial court specifically found that Partridge's negligence in filing the trigger mechanism of his gun constituted a proximate cause of Vanida's injuries. Applying the above principles, we conclude that the trial court properly found the homeowner's policy applicable to the accident.

State Farm additionally contends, however, that such a conclusion—im-

---

[11] Our conclusion that coverage is available whenever an insured risk constitutes a proximate cause of an accident, even if an excluded risk is a concurrent proximate cause, is consistent with Insurance Code sections 530 and 532, as authoritatively construed in *Sabella* v. *Wisler* (1963) 59 Cal.2d 21 [27 Cal.Rptr. 689, 377 P.2d 889] (discussed in fn. 10, *supra*). Section 530 provides that "[a]n insurer is liable for a loss of which a peril insured against was the proximate cause, although a peril not contemplated by the contract may have been a remote cause of the loss; but he is not liable for a loss of which the peril insured against was only a remote cause." Section 532 provides that "[i]f a peril is specially excepted in a contract of insurance and there is a loss which would not have occurred but for such peril, such loss is thereby excepted even though the immediate cause of the loss was a peril which was not excepted."

In interpreting these two sections in light of one another, the *Sabella* court rejected the insurer's contention that coverage was unavailable whenever an excluded risk constituted a "but for" cause of an accident. The *Sabella* court declared: "[I]f section 532 were construed in the manner contended for by defendant insurer, where an excepted peril operated to any extent in the chain of causation so that the resulting harm would not have occurred 'but for' the excepted peril's operation, the insurer would be exempt even though an insured peril was the proximate cause of the loss. Such a result would be directly contrary to the provision in section 530, in accordance with the general rule, for liability of the insurer where the peril insured against proximately resulted in the loss." (59 Cal.2d at p. 33.)

posing liability on the insurer under both the automobile policy and the homeowner's policy—is inconsistent with our court's recent opinion in *Herzog* v. *National American Ins. Co.* (1970) 2 Cal.3d 192 [84 Cal.Rptr. 705, 465 P.2d 841], which held that in general a homeowner's policy does not afford coverage for automobile accidents that occur away from one's home. In *Herzog* the plaintiff claimed that because his homeowner's policy specifically provided coverage for automobile-related accidents on the premises and "the ways immediately adjoining" those premises, the homeowner's policy constituted an "automobile liability policy" under the doctrine of *Wildman* v. *Government Employees' Ins. Co.* (1957) 48 Cal.2d 31 [307 P.2d 359] and, as a consequence, the policy assertedly necessarily provided coverage for *all* automobile accidents "within the continental limits of the United States" pursuant to Vehicle Code section 16451. We rejected such an argument, which would have transformed a normal homeowner's policy into a general automobile liability policy covering *all* auto accidents away from the home, reasoning that neither the insured nor the insurer could reasonably expect such a consequence. (2 Cal.3d at p. 197.)

The accident under consideration in *Herzog*, however, was a normal automobile accident resulting from the collision of a car and a motor bike on the Santa Ana Freeway. In concluding that a homeowner's policy did not generally afford coverage for such ordinary automobile accidents, arising *solely* out of the use of the vehicle, the *Herzog* case did not foreclose the possibility that in cases involving "non-ordinary" automobile accidents, both a homeowner's policy and an automobile liability policy would provide coverage. Indeed, the court in *Herzog* specifically averred to this possibility, observing that "[i]t is clear, of course, that homeowner's and automobile or motor vehicle policies may in some circumstances provide overlapping coverage." (2 Cal.3d at p. 197, fn. 3.) We believe that in the instant circumstances, when a non-automobile risk and an automobile risk constitute concurrent proximate causes of an accident, overlapping coverage is appropriate.

In sum, in purchasing two separate insurance policies from State Farm, the insured obtained coverage for liabilities arising from different sources. Under the homeowner's policy, the insurer agreed to protect the insured against liability arising generally from non-auto-related risks; under the automobile policy the insurer guaranteed indemnity arising from auto-related risks. Since the injury and the insured's liability in the instant case resulted from both auto-related and non-auto-related causes, the insurer is liable under both policies. (Cf. *Liberty Mut. Ins. Co.* v. *Colonial Ins. Co.* (1970) 8 Cal.App.3d 427, 431 [87 Cal.Rptr. 348].) The trial court prop-

erly concluded that coverage was available under both the automobile policy and the homeowner's policy.

The judgment is affirmed.

Wright, C. J., Mosk, J., and Burke, J., concurred.

**CLARK, J.**—I dissent.

The language of the exclusion clause of the homeowner's policy, "arising out of the . . . use . . . of a motor vehicle," is clear and unambiguous when applied to the facts of this case. Neither statute nor public policy precludes giving effect to the exclusion clause before us, and it should be enforced in accordance with the reasonable expectations of the parties.

Insurance policies are contracts to be construed according to traditional contract principles requiring courts to take cognizance of the intent of the parties. While it is true exclusion clauses must be interpreted narrowly, with ambiguity being construed against the insurer, language considered ambiguous when applied to some circumstances is not ambiguous per se, but must be judged by the facts of each case. (*Herzog* v. *National American Ins. Co.* (1970) 2 Cal.3d 192 [84 Cal.Rptr. 705, 465 P.2d 841].)[1]

Because the negligent driving of an automobile was found to have been a direct and proximate cause of the accident, this occurrence comes within the express language of the exclusion clause, which negates coverage. In no way does the contract indicate the exclusion clause will be rendered inapplicable by the circumstance that there were other nonexcluded causes of the accident. The clause manifests the intent of the parties to exclude

---

[1]The majority cites numerous cases allowing coverage when, unlike the instant case, there was obvious ambiguity in application of the exclusion clause to the facts. For instance, in *Great American Indem. Co. of New York* v. *Saltzman* (8th Cir. 1954) 213 F.2d 743, the policy excluded use of aircraft. The insured entered an airplane without permission to examine the instruments, accidentally causing it to move. In *Assurance Company of America* v. *Bell* (1963) 108 Ga.App. 766 [134 S.E.2d 540], the act of insured's child entering a car and accidentally releasing the brakes was held not to be "use" of the car. In these cases, it was reasonable to conclude the activity failed to constitute "use" of the vehicles and coverage was granted.

In other cases relied on by the majority, use of the vehicle was tenuously related to the chain of events causing the accident, automobile and homeowners' policies therefore both providing coverage. (E.g., *Brenner* v. *Aetna Insurance Company* (1968) 8 Ariz.App. 272 [445 P.2d 474, 479]; *Richland Knox Mutual Insurance Company* v. *Kallen* (6th Cir. 1967) 376 F.2d 360, 364.) Each involved a close question whether the accident arose out of "use" of a vehicle. It was therefore proper to construe the coverage clause liberally and on the same facts construe the identical wording of the exclusion clause of the homeowner's policy narrowly, resulting in overlapping coverage. Such results comport with the reasonable expectations of the parties but are inapplicable here.

coverage by the homeowner's policy for accidents caused by high-risk, auto-related activity, and the rates were no doubt fixed and paid accordingly. (See *Gulf Ins. Co.* v. *Edgerly* (1973) 31 Cal.App.3d 334, 340 [107 Cal. Rptr. 246].) Foreseeing the possibility of car-related negligence actions, the prudent person seeks the coverage of an automobile liability policy—this the insured did. This court should not now add to the homeowner's policy, in the guise of construction, a provision nullifying the exclusion clause in cases of concurrent proximate causation. Such provision would be consistent neither with the contract as written nor with the reasonable expectations of the parties.

Although section 530 of the Insurance Code mandates coverage when the insured peril is the proximate cause of the accident and the excluded peril is a remote cause, neither statute nor public policy precludes giving effect to an exclusion clause when the causes are independent, concurrent and proximate. To the contrary, section 532 of that code reflects a policy of effectuating exclusion clauses in cases similar to this. Within the limits of *Sabella* v. *Wisler* (1963) 59 Cal.2d 21 [27 Cal.Rptr. 689, 377 P.2d 889][2] (see *ante,* p. 105, fn. 11), the section requires that, in cases of concurrent causation when the expected peril is a "but for" cause and the immediate cause of the loss was a nonexcepted peril, the exclusion clause will be controlling.[3]

Two cases in particular are relied on by the majority as factually and legally similar to this one. In *Brooks* v. *Metropolitan Life Ins. Co.* (1945) 27 Cal.2d 305 [163 P.2d 689], in which a cancer patient succumbed to accidental injuries in part because of his existing condition, the court found the excluded cause was remote, stating: "[R]ecovery may be had even though a diseased or infirm condition [the excluded risk] appears to actually contribute to cause the death if the accident [the insured risk] sets in progress the chain of events leading directly to death, or if it is the prime or moving cause." (*Id.* at pp. 309-310.) In *Sabella* v. *Wisler, supra,* the insured risk (rupture of a sewer line) was the efficient proximate cause, the one setting the excluded cause (subsidence) in motion.

---

[2]*Sabella* says, in effect, that because of a conflict with section 530, section 532 is inoperative where a "but for" cause is too remote to be regarded as proximate. *Sabella* does not say that section 532 conflicts with section 530 when it is applied to exclude coverage of an occurrence concurrently and proximately caused by an excluded peril.

[3]The broad language, " 'It has been held that when two causes join in causing an injury, one of which is insured against, the insured is covered by the policy . . . .' " (*Hughes* v. *Potomac Ins. Co.* (1962) 199 Cal.App.2d 239, 244 [18 Cal.Rptr. 650]; *Zimmerman* v. *Continental Life Ins. Co.* (1929) 99 Cal.App. 723, 726 [279 P. 464]), is contrary to section 532 (even as construed in *Sabella* v. *Wisler, supra*) and should not be relied on in this case.

In both cases coverage was properly allowed, for certainly an insured may reasonably expect that remote, incidental, or dependent causes will be disregarded in determining his coverage. However, in the instant case, the excluded cause was not remote, incidental, or dependent, but rather was direct, proximate, and independent; and, as the majority appears to concede (*ante,* p. 104), it can hardly be said the risk insured against by the homeowner's policy was the "prime," "moving," or "efficient" cause.

Under the circumstances, we should give effect to the exclusion clause in accordance with the obvious expectations of the parties.

I would reverse the judgment.

McComb, J., concurred.