IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
_____

PLANET ROCK, INC.,
(f/u/b BOBBY AND VICKI
WILLIAMS),

        Plaintiff-Appellee,

                                Madison Circuit No. C96-348-II

Vs.                                     C.A. No. 02A01-9807-CV-00218

REGIS INSURANCE COMPANY,

        Defendant-Appellant.

_____

FILED

May 28, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

FROM THE MADISON COUNTY CIRCUIT COURT
THE HONORABLE FRANKLIN MURCHISON, JUDGE

Lawrence E. Levine, Dale A. Tipps; Levine, Mattson,
Orr & Geracioti of Nashville
For Appellant

Martin W. Zummach; Sparkman-Zummach of Southaven, MS
For Appellees, Bobby and Vicki Williams

*AFFIRMED AND REMANDED*

Opinion filed:

W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.

CONCUR:

ALAN E. HIGHERS, JUDGE

HOLLY KIRBY LILLARD, JUDGE

This appeal concerns a dispute over coverage under a general liability insurance policy.

Defendant/appellant, Regis Insurance Company (Regis), appeals the order of the trial court

granting summary judgment to plaintiff/appellee, Planet Rock, Inc. (Planet Rock) f/u/b Bobby

and Vicky Williams.

Planet Rock is a Jackson, Tennessee nightclub, and on September 29, 1995, an altercation occurred between two of Planet Rock's patrons. Craig Williams (Williams) and Benjamin Blackwell (Blackwell) got into a heated argument inside the club. After moving the argument outside to a nearby Kmart parking lot, they began fighting. Williams received the worst of the exchange and was knocked unconscious. He was brought back into Planet Rock by the nightclub's employees and possibly some patrons and placed on a couch in one of the club's offices to rest. When Planet Rock employees later checked on Williams, they found that he had died from his injuries.

Bobby and Vicky Williams, parents of Craig Williams, sued Planet Rock and others[1] in Madison County Circuit Court seeking damages for their son's wrongful death. As pertinent to the case before us, the complaint alleges that when the disagreement arose between Williams and Blackwell, they were ordered to get out of the club "if they were to begin striking each other," and they left the club. The complaint states:

> 19. Ultimately, the physical confrontation began between Plaintiffs' deceased and Defendants Blackwell and Lewis. The physical confrontation resulted in Plaintiffs' deceased being knocked unconscious by Defendants Blackwell and Lewis and then viciously and violently kicked in the head, torso and groin by Defendants Blackwell and Lewis.
>
> 20. At the conclusion of this vicious attack by the Defendants Blackwell and Lewis, but before Plaintiffs' deceased expired, patrons and employees of Defendant Planet Rock brought the Plaintiffs' deceased, Craig Williams, back inside the establishment of Defendant Planet Rock.
>
> 21. At no time, while Craig Williams was still alive and physically situated within the offices of Defendant Planet Rock, did any agent, employee or servant of Defendant Planet Rock call for medical assistance. In fact, an employee of Defendant Planet Rock called and canceled a request for police assistance after the fight had begun.
>
> 22. Sometime later and without the benefit of medical assistance, the Plaintiffs' deceased, Craig Williams, died of the injuries he received in the vicious attack conducted by Defendants Blackwell and Lewis.

---

[1] The suit named as defendants Benjamin Blackwell and Kimberly Ann Lewis (the other parties involved in the altercation), Gilligan's Inc., another Jackson nightclub, and the individually named stockholders of Planet Rock. Except for the allegations against Blackwell and Lewis, the involvement of parties other than Planet Rock was not relevant to the issues in this case.

*          *          *

42. Upon being informed of the serious injuries to the deceased, Defendant Planet Rock, by and through its agents, servants or employees, voluntarily undertook the medical care of the injured Craig Williams. Defendant Planet Rock, by and through its agents, servants or employees, undertook the medical care of the injured Craig Williams in a grossly negligent manner, failing or refusing to make available professional medical assistance which was available, thereby denying the deceased proper medical care ultimately leading to and proximately causing his death. The medical care provided by Defendant Planet Rock's employees, agents or servants fell below the minimum acceptable standard of medical care recognized in like or similar circumstances in Jackson, Madison County, Tennessee by those health care professionals familiar with said standard of care.

At the time of the occurrence involving Blackwell and Williams, Planet Rock had in full force and effect a general liability insurance policy issued by Regis Insurance Company. Pursuant to the terms and provisions of the policy, Planet Rock notified Regis of the original incident involving Blackwell and Williams, and after the lawsuit was filed, notified Regis of the lawsuit. Regis responded to the latter notification by letter dated December 13, 1995, which states in pertinent part:

> Please be advised that we have received a copy of the above captioned Civil Action Complaint which was filed against Planet Rock, et al.
>
> We have carefully reviewed the averments contained within the Complaint and find that all the claims and causes of action and damages sought are specifically excluded under policy RM 113721.
>
> Your records will indicated [sic] that on 10/11/95 you reported to Regis Insurance Company the claim of Craig Williams. At that time, Regis Insurance Company commenced an investigation into this matter and determined that the plaintiff was alleging that the cause of his death was as a result of injuries sustained from an Assault and Battery. Under the date of 11/15/95, Regis Insurance Company sent to you a Reservation of Rights advising you that policy No. RM 113721, under which you seek coverage contained an Assault and Battery Exclusion.
>
> *          *          *
>
> Thus, ***we regretfully advise you that Regis Insurance Company declines to participate in either the defense or indemnification of this lawsuit.*** We suggest that you immediately forward this matter on to your personal counsel to see that your interests are properly protected.

(emphasis supplied).

Again, on January 3, 1996, Planet Rock's counsel sent a letter to Regis pointing out the

3

allegations of negligence against Planet Rock which were outside the exclusions in the policy. Regis responded by letter stating: "Our position which was stated in our letter of 12/13/95 remains unchanged."

Planet Rock defended the suit and after pretrial procedures, the case was tried on September 20, 1996 by the court sitting without a jury. The trial court's judgment in favor of the Plaintiffs states in pertinent part:

> 1) That the evidence presented supports Plaintiffs' contentions that Defendant, Blackwell, intentionally battered the Plaintiffs' deceased, Craig Williams, causing him pain and injury. The Court assesses damages against the Defendant, Blackwell, arising out of Blackwell's attack on Plaintiffs' deceased in the amounts of $150,000.00 compensatory damages, and because the attack was particularly ferocious, $150,000.00 punitive damages.
>
> 2) The Court further finds that the evidence presented supports the Plaintiffs' contentions in that Plaintiffs suffered damages as a proximate result of the negligence of the Defendant, Planet Rock, Inc. Specifically, Planet Rock, Inc., by and through its employee, Scott Luckman, acting within the scope of his employment, and about the business of Planet Rock, Inc., voluntarily undertook the duty of medical care and custody of the Plaintiffs' deceased, Craig Williams, after Mr. Williams had been injured, doing so in a negligent fashion failing to render the appropriate medical care for Mr. Williams' injuries and further failing to summon professional medical assistance, which, as a matter of law, was the proximate cause of Craig Williams' death inasmuch as, had medical care been called, and rendered to Craig Williams, the Court finds that Craig Williams would have survived his injuries that he suffered on the night of September 29, 1995.
>
> 3) It is further this Court's finding that the damages awarded herein against Defendant, Planet Rock, Inc., are supported by the testimony relating to the earning capacity and age of the deceased in the determination of the economic value of Mr. Williams' life, combined with the measure of pain and suffering experienced by the deceased prior to his demise brought about by the failure to summon medical assistance.
>
> IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the Plaintiffs are awarded a Judgment against Benjamin Blackwell, in the amount of $150,000.00 compensatory and $150,000.00 punitive damages and post-judgment interest to accrue from the date of entry of this Judgment.
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Plaintiffs are awarded a Judgment against the Defendant, Planet Rock, Inc., in the amount of $1,250,000.00 and post-judgment interest to accrue from the date of entry of this judgment. The costs, to include court costs and discretionary costs incurred in this cause are assessed against both Defendants, Blackwell and Planet Rock, Inc.

*       *       *

After judgment was rendered in the tort case, Planet Rock, for the use and benefit of Bobby and Vicky Williams, filed the instant suit against Regis[2]. In essence, Planet Rock alleges that it had in full force and effect a general liability policy with Regis and that Regis breached its contract of insurance by failing to provide a defense in the tort case. The complaint further alleges that Regis breached the contract by failing and refusing to pay the judgment, interest, and costs adjudged against Planet Rock. The suit seeks judgment for costs incurred by Planet Rock in defending the tort case and judgment for the amount of the judgment, costs, and interest in the tort case. The Regis policy, upon which suit is brought, provides in part pertinent to the inquiry before us:

COVERAGE A -- BODILY INJURY LIABILITY
*       *       *

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
> > A. bodily injury. . .
>
> *       *       *
>
> to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury . . ., even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient. . . .

*       *       *

> VII. INCIDENTAL MEDICAL MALPRACTICE LIABILITY COVERAGE
>
> The definition of bodily injury is amended to include Incidental Medical Malpractice Injury.
>
> Incidental Medical Malpractice Injury means injury arising out of the rendering of or failure to render, during the policy period, the following services.
>
> (A) medical, surgical, dental, x-ray or nursing service or treatment or the furnishing of food or beverages in connection therewith;

*       *       *

ASSAULT AND BATTERY EXCLUSION

---

[2] The suit was originally filed against Ryan and Davis, Inc., and Buddy Ryan individually, the agents that sold Plant Rock the policy. The suit was amended to add Regis and subsequently the suit against the agents was voluntarily dismissed.

5

In consideration of the premium charged for this insurance, it is understood and agreed that the policy to which this endorsement is attached is amended and modified as follows:

Actions and proceedings to recover damages for bodily injuries or property damage arising from the following are excluded from coverage and the Company is under no duty to defend or to indemnify an insured in any action or proceeding alleging such damages:

1. Assault and Battery or any act or omission in connection with the prevention or suppression of such acts;
2. Harmful or offensive contact between two or among two or more persons;

*         *         *

This exclusion applies regardless of the degree of culpability or intent and without regard to:

A. Whether the acts are alleged to be by or at the instruction or at the direction of the insured, his officers, employees, agents or servants; or by any other person lawfully or otherwise on, at or near the premises owned or occupied by the insured; or by any other person;

B. The alleged failure of the insured or his officers, employees, agents or servants in the hiring, supervision, retention or control of any person whether or not an officer, employee, agent or servant of the insured;

C. The alleged failure of the insured or his officers, employees, agents or servants to attempt to prevent, bar or halt any such conduct.

Regis's answer to the complaint denies that Planet Rock was entitled to a defense of the suit and also denies that Planet Rock is entitled to recover the policy proceeds in payment of the judgment rendered against it by virtue of the assault and battery exclusion set out above.

On June 12, 1998, the trial court entered its order granting summary judgment to Planet Rock. The order stated in part:

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1. At the time the Amended Complaint in Cause No. 95-338 was filed, the duty on the part of Regis Insurance Company, to defend its insured, Planet Rock, Inc., arose based upon allegations contained within said Amended Complaint;

2. After a trial upon the merits, the written findings of fact and law issued by the Trial Judge, Whit LaFon, in Cause No. 95-338, by its terms resulted in insurance coverage being extended for the damages for which Planet Rock, Inc. found itself liable pursuant to the terms of the Regis Insurance policy, RM1137121, inasmuch as the trial judge held that Craig Williams' death was

6

proximately caused by Planet Rock, Inc.'s failure to make available appropriate medical care and further found that if Planet Rock, Inc. had made appropriate medical care available, Craig Williams would have survived the injuries inflicted upon him. Said failure on the part of Planet Rock, Inc. to provide or render appropriate medical aid for Craig Williams' injuries was an act covered by the terms of the policy issued by Regis Insurance Company to Planet Rock, Inc.;

3.  by refusing to defend its insured, Planet Rock, Inc., Regis Insurance Company is bound by the judgment rendered in Cause No. 95-338 against Planet Rock, Inc. as to all issues supporting the Trial Court's Order in Cause No. 95-338.

*       *       *

Subsequently, on June 30, 1998, the court entered its final order which states:

1.  This Court earlier ruled that Defendant, Regis Insurance Company, breached its obligation to its insured, Planet Rock, Inc., by failing to defend its insured, Planet Rock, Inc., in Cause Number 95-338.

2.  The allegations contained in the Complaint in Cause Number 95-338 styled Williams vs. Planet Rock, Inc., et al, triggered insurance coverage on the part of Regis Insurance Company and the duty to defend its insured, Planet Rock, Inc.

3.  The Judgment rendered in Cause Number 95-338 by the Honorable Judge Whit LaFon found liability on the part of Planet Rock, Inc. the basis of which fell within the coverage of the insurance policy issued by Regis Insurance Company to its insured, Planet Rock, Inc.

4.  The Court now rules that the measure of damages for Regis Insurance Company's failure to defend its insured as obligated in its contract is *contractual damages.* Said contractual damages amount to $1,000,000.00, the limit of said policy of insurance which was available to satisfy the $1,250,000.00 Judgment rendered against Planet Rock, Inc. in Cause number 95-338. Additionally, pursuant to its contract of insurance, Regis Insurance Company is responsible to pay post-judgment interest accrued from the date the underlying Judgment of Judge LaFon was rendered in Cause number 95-338.

5.  For Regis' failure to defend, which has been determined to be wrongful, Regis Insurance Company is responsible and liable for the costs of defense which was incurred by the insured, Planet Rock, Inc. The only proof submitted to the Court on the question of defense costs is the Affidavit of Lewis Cobb, Defense Counsel for Planet Rock, Inc. in the underlying suit. Said costs, being uncontroverted, are found to have been reasonable and necessary under the circumstances and are to be reimbursed by Regis Insurance Company to its insured, Planet Rock, Inc.

6.  Finally, pursuant to its contract of insurance, Regis Insurance Company is liable and responsible for court costs in Cause Number 95-338 to be supported by the bill of costs prepared by the Circuit Court Clerk of Madison County.

7

Regis has appealed and presents two issues for review, as stated in its brief:

1. The Trial Curt erred because Planet Rock is not entitled to judgment as a matter of law.

2. The Trial Court erred because summary judgment is premature, as there are genuine issues of material fact that have not been resolved.

We will first address Regis's second issue wherein it asserts that summary judgment is inappropriate because there are factual issues regarding the cause of Williams's injury and death. We are somewhat mystified by this assertion for several reasons. In Planet Rock's complaint, it is alleged that "on or about September 29, 1995, an altercation arose between Mr. Craig Williams and Mr. Benjamin Blackwell and Ms. Kimberly Lewis. This altercation resulted in Mr. Craig Williams's death." Regis's answer to the complaint admits this allegation. Moreover, the trial court in the underlying tort case found that Williams was greviously injured by Blackwell and that this led to his being placed under the care of Planet Rock. Finally, Planet Rock concedes that Blackwell's assault and battery caused injuries to Williams that led to Planet Rock's actions resulting in Williams's death.

We do not find a material factual dispute. Questions involving an insurance policy's coverage and an insurer's duty to defend require the interpretation of the insurance policy in light of claims asserted against the insured. *Standard Fire Ins. Co. v. Chester-O'Donley & Assoc., Inc.*, 972 S.W.2d 1 (Tenn. App. 1998). The issues relating to the scope of coverage and an insurer's duty to defend present questions of law which can be resolved by summary judgment when the relevant facts are not in dispute. *Id.* at 5-6. Summary judgment may be granted only when there are no genuine material factual disputes with regard to the claim or the defense asserted in the motion, and when the moving party is entitle to a judgment as a matter of law. Tenn.R.Civ.P. 56.03; *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993).

In construing insurance contracts, this Court is obligated to attempt to determine the intent of the contracting parties, and because the policy was drafted by the insurance company, we must resolve any ambiguity and doubt in favor of the insured. *NSA DBA Benefit Plan, Inc. v. Connecticut Gen. Life Ins. Co.*, 968 S.W.2d 791 (Tenn. App. 1997). Where the language of an insurance policy is reasonably susceptible of two meanings, we are obligated to give the particular language the interpretation most favorable to the insured. *Id*. at 795. Ambiguity in

a contract is doubt or uncertainty arising from the possibility of the same language being fairly understood in more ways than one. *Id.*

Regis asserts in its first issue that the assault and battery exclusion in the policy is an absolute defense to this case inasmuch as there would have been no injury or death to Williams but for the assault and battery.

Planet Rock asserts that Regis is liable for breach of its contract of insurance in two respects: (1) a duty to defend; and (2) the obligation to indemnify.

In *Drexel Chemical Co. v. Bituminous Ins. Co.*, 933 S.W.2d 471 (Tenn. App. 1996), the Court said:

> An insurer's duty to defend is separate and distinct from the insurer's obligation to pay claims under the policy. *Jackson Housing Auth. v. Auto-Owners Ins. Co.,* 686 S.W.2d 917 (Tenn. App. 1984). The duty to defend is broader than the duty to indemnify. This court must review the allegations of the complaint and determine whether any of them are covered under the policy. If even one of the allegations is covered by the policy, the insurer has a duty to defend, irrespective of the number of allegations that may be excluded by the policy. *U. S. Fidelity & Guar. Co. v. Murray Ohio Manuf. Co.,* 693 F.Supp. 617 (M.D. Tenn. 1988). An insurer may not properly refuse to defend an action against its insured unless "it is plain from the face of the complaint that the allegations fail to state facts that bring the case within or potentially within the policy's coverage." *Glens Falls Ins. Co. v. Happy Day Laundry, Inc.*, 19784 T.V., 1989 WL 91082 (Tenn. App. August 14, 1989).

*Id.* at 480.

The complaint in the tort case alleged various and sundry acts on the part of Planet Rock and giving the complaint a liberal construction would be covered by the policy provisions. Although the assault and battery exclusion exists, it did leave some doubt as to the meaning of "arising out of," and the specific allegation concerning a failure to provide medical assistance made it more than questionable that allegations of the complaint "plead to the coverage." Considering all of the circumstances, we feel that the allegations were sufficient to require Regis to provide a defense to Planet Rock.

We now turn to the indemnity coverage. Regis's defense is premised on the assault and battery exclusionary clause. Regis asserts that no matter what else happened, if there is an assault and battery that starts the chain of events, the bodily injury arises out of the assault and battery and therefore there is no coverage. In support of this assertion, Regis cites numerous

cases from other jurisdictions regarding the validity and applicability of assault and battery exclusionary clauses. In those cases cited wherein the courts have discussed the key phrase, "arising out of," the courts followed the view that the causation factor is confined to one incident. While this view is adopted by a number of courts in other jurisdictions, it does not represent the law in Tennessee.

We have reached the conclusion that this case is controlled by the decision of our Supreme Court in *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883 (Tenn. 1991)[3], which is a declaratory judgment action filed by the insurance company to determine whether it had any liability under its homeowners policy which contained an exclusion of coverage for injuries arising out of the maintenance of a motor vehicle. The insuring clause of the Allstate policy provided: "Allstate will pay all sums arising from an accidental loss which an insured person becomes legally obligated to pay as damages because of bodily injury or property damage covered by this part of the policy." The applicable exclusion provides, "We do not cover bodily injury or property damage arising out of the ownership, maintenance, use, occupancy . . . loading or unloading of any motorized land vehicle or trailer." *Id.* at 884. The Allstate insured, Crafton, was assisting a friend in replacing brake shoes on the friend's truck in the insured's garage. While experiencing difficulty in removing lug nuts from one of the wheels, Watts, another friend, agreed to use his welding torch to facilitate the removal of the lug nuts. After Crafton assured him there were no flammable materials in the garage, he starting using the torch. In doing so sparks scattered on the garage floor and ignited a pan of flammable liquid which was under the truck. Watts noticed the fire and told the Crafton about it, and Crafton picked up the pan and started to move it out of the garage. Because of the heat, he dropped it, splashing the flaming liquid on Watts and causing an injury. Watts sued Crafton alleging that Crafton was negligent in failing to warn him about the flammable liquids and also for his negligence in dropping the pan. Allstate then filed this declaratory judgment action after it denied coverage contending that Watts's injuries arose out of the maintenance of an automobile and was within the policy exclusion. "The trial court, using the concurrent cause doctrine, held that Allstate was obligated to provide coverage to the policyholders. The Court of Appeals, using

---

[3] This case was not referred to by either party.

the chain of events doctrine, reversed." *Id*. at 884. In reversing the Court of Appeals, the Supreme Court noted with approval the holding in *Almany v. Nationwide Ins. Co.*, 1987 WL 4745, where the Middle Section of this Court, considering similar coverage and exclusion under a homeowners policy held "that the insurer was liable under the 'concurrent causation doctrine' which provides that coverage under a liability policy is equally available to an insured whenever an insured risk constitutes a concurrent proximate cause of the injury." *Id*. at 886.

The Court noted with approval the decision in *State Farm Mutual Ins. Co. v. Partridge*, 10 Cal.3d 94, 109, Cal.Rptr. 811, 514 P.2d 123 (1973) where the California Supreme Court considered coverage under a homeowners policy with the exclusionary provision "arising out of the ownership, maintenance, operation, use . . . of any motor vehicle." In that case, the insured filed the trigger mechanism of a pistol so it would have a hair trigger, and while transporting the pistol in the insured vehicle, it discharged injuring a passenger. Commenting on the action of the California Court, our Supreme Court said:

> The California Supreme Court held that the insurance company was liable, explaining that although the policy excluded injuries "arising out of the use" of an automobile, the exclusion did not apply when an accident results from the combination of a nonvehicle-related cause and a vehicle-related cause. "Coverage cannot be defeated simply because a separate excluded risk constitutes an additional cause of the injury." *Partridge*, at 813, 514 P.2d at 125. The Court also stated: "That multiple causes may have effectuated the loss does not negate any single cause; that multiple acts concurred in the infliction of the injury does not nullify any single contributory act." *Id*. at 818, 514 P.2d at 130-31. *Cf. Garvey v. State Farm*, 48 Cal.3d 395, 257 Cal.Rptr. 292, 770 P.2d 704 (1989). The concurrent cause doctrine has been followed in a number of jurisdictions other than in California. *See, e.g., U.S. Fidelity & Guaranty Co. v. State Farm,* 107 Ill. App.3d 190, 63 Ill.Dec. 14, 18, 437 N.E.2d 663, 667 (1982); *LeJeune v. Allstate Ins. Co.*, 365 So.2d 471, 479 (La. 1978); *Waseca Mut. Ins. Co. v. Noska*, 331 N.W.2d 917, 921 (Minn. 1983); *Eichelberger v. Warner*, 290 Pa.Super. 269, 434 A.2d 747, 751-52 (Penn. 1981); *Lawver v. Boling,* 238 N.W.2d 514, 521-22 (Wis. 1976). *See also*, 7A J. Appleman, *Insurance Law and Practice* § 4500 at 179-81 (1979); 12 *Couch on Insurance 2d (Rev. ed)* § 44A (1984); Keeton, *Insurance Law* § 5.5(c) at 553-56.

*Id.* at 887.

Our Supreme Court continued:

> While there are a variety of ways to analyze the problem before us, this Court is persuaded that there should be coverage in a situation such as in the instant case, where a nonexcluded cause is a substantial factor in producing the damage or injury,

even though an excluded cause may have contributed in some form to the ultimate result and, standing alone, would have properly invoked the exclusion contained in the policy. It is true that "arising out of" is an extremely broad phrase, so broad, in fact, that it is difficult to conceive of a rule that draws a justifiable line between coverage and no coverage at any reasonable point. Adopting Allstate's interpretation of "arising out of" to include *any* causal relationship would exclude coverage if, for example, Watts had gone into Crafton's home to retrieve a tool to aid in removing the lug nuts, and fell down a flight of stairs. Arguably, at least, maintaining the vehicle would have set in motion the chain of events that produced the eventual result. That is, but-for the difficulty encountered in maintaining the brakes on the truck, Watts would not have been inside of the home when he fell in order to obtain the tool. The problem with this approach is that cause and effect extend to near infinity. It is for this reason that we reflect the "chain of events" theory of application which appears to hinge on a "but-for" theory of causation utilized by the Court of Appeals and urged by Allstate.

*Id*. at 887.

Finally, the Court, in holding that the insurer must provide coverage under the homeowners policy, said:

> *We reject the contention that there can be no coverage when the chain of events leading to the ultimate harm is begun by an excluded risk*, concluding instead that coverage cannot be defeated simply because excluded risks might constitute an additional cause of the injury. "That multiple causes may have effectuated the loss does not negate any single cause; that multiple acts concurred in the infliction of injury does not nullify any single contributory act." *Partridge*, 109 Cal.Rptr. at 818, 514 P.2d at 130.

*Id.* at 888 (emphasis added).

Accordingly, the order of the trial court is affirmed, and this case is remanded for such other proceedings as may be necessary. Costs of the appeal are assessed to

the appellant.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

_____
**ALAN E. HIGHERS, JUDGE**

_____
**HOLLY KIRBY LILLARD, JUDGE**

12