IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 2, 2002 Session

## GALE SMITH & COMPANY, INC. v. THE GOVERNORS CLUB, L.L.C.

**Appeal from the Circuit Court for Williamson County**
**No. 2K578      Timothy L. Easter, Judge**

_____

**No. M2001-01616-COA-R3-CV - Filed September 20, 2002**

_____

This is a breach of contract case. The defendant real estate developer developed a golf club. The plaintiff insurance broker entered into an insurance binder with the manager of the golf club. The "master" binder covered five separate properties with which the manager was involved. The binder listed another of the manager's entities as the insured. The manager was later terminated by the defendant and a new management company was hired to manage the golf club. The insurance broker then issued a separate policy naming the defendant as the insured and sent invoices for the unpaid premiums to the new management company. The management company declined to pay the premiums. The insurance broker then filed suit against the defendant. The trial court entered a judgment for the insurance broker for all unpaid premiums due under the insurance binder, plus interest. We affirm, finding that manager had the apparent authority to enter into an insurance contract and that there was a contract for insurance between the parties.

**Tenn. R. Civ. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Scott K. Haynes and Austin L. McMullen, Nashville, Tennessee, for the appellant, The Governors Club, L.L.C.

Mark B. Reagan, Nashville, Tennessee, for the appellee, Gale Smith & Company, Inc.

### OPINION

Plaintiff/Appellee Gale Smith & Company, Inc. ("Gale Smith") is a Tennessee insurance broker. Defendant/Appellant The Governors Club, L.L.C. ("Governors Club") is a Tennessee Limited Liability Company engaged in real estate development. The Governors Club's properties include a golf club, The Governors Club at Pleasant Hill ("Golf Club"), located in Williamson County, Tennessee. David Miller ("Miller") served as the developer and manager of the Golf Club, through an entity known as MSB Governors, L.L.C. ("MSB").

In June, 1999, Miller met with Phil Hester ("Hester"), an employee of Gale Smith. In this meeting, a "master" insurance binder was drawn up for general liability and worker's compensation insurance for five properties managed by Miller, including the Golf Club. The binder listed the insured as Cornerstone Management, Inc. ("Cornerstone"), another entity managed by Miller. In the section of the binder titled "Special Conditions/Other Coverages," however, several entities are listed as insureds, including the Governors Club as well as Cornerstone. After the original binder was issued, Paul Craig ("Craig"), the chief financial officer of the several entities for which Miller had responsibility, told Hester to remove the Governors Club properties from the master policy and issue a separate policy with the Golf Club as the named insured.

On July 30, 1999, Governors Club sent Miller a letter terminating MSB as the manager of the Golf Club. The letter stated that, "as a result of this removal, MSB has no authority to manage or otherwise act on behalf of the LLC or the project known as The Governors Club at Pleasant Hill." Subsequently, on September 15, 1999, Craig sent a letter to Hester, telling him that the Golf Club's new manager, Eagle Investments, L.L.C. ("Eagle"), had obtained insurance through another broker. Therefore, Craig's letter stated, the effective dates of the binder would be June 16, 1999 to July 31, 1999. Craig's letter also informed Hester that all bills for premiums due under the Golf Club policy should be sent to Eagle.

On October 18, 1999, Gale Smith issued new policies for the Golf Club property for the period of June 15, 1999 to August 1, 1999. The new policies named Governors Club as the insured. On October 29, 1999, invoices were sent to Eagle for the insurance premiums due on the Golf Club's commercial package policy and worker's compensation policy for the effective period.[1] Eagle did not pay the premiums.

Consequently, Gale Smith filed suit in general sessions court against Governors Club to recover unpaid insurance premiums due under the policy. In general sessions court, Gale Smith was awarded a default judgment. Governors Club appealed the default judgment to the Williamson County Circuit Court.

At the trial in circuit court, Hester testified about his negotiations with Miller. Hester stated that when he was negotiating with Miller, he believed that "David Miller was The Governors Club." Hester testified that Gale Smith "bound all David Miller entities" as of June 15, 1999. Miller testified as well, acknowledging that, at the time he was negotiating with Hester about the insurance, there were limitations on his authority. Miller, however, did not tell Gale Smith of the limitations on his authority. The record does not indicate that any claims were filed on the insurance policy during the time period in question.

---

[1] Apparently, invoices had not been sent to either Cornerstone or Governors Club prior to this time.

After the trial, the trial court issued the following findings:

1. That a contract existed between the Plaintiff and the Defendant with respect to the insurance policies which were the subject of this lawsuit.

2. That the contract was entered into with apparent or ostensible authority and supported by privity of contract between the parties.

3. That the defendant Governors Club, L.L.C. is in breach of said contract in the amount of Twelve Thousand Seven Hundred Fourteen Dollars ($12,714.00).

Thus, the trial court found that a contract for insurance existed between the parties and that Governors Club owed Gale Smith for the unpaid premiums. On May 31, 2002, the trial court entered a judgment awarding Gale Smith the amount of the unpaid premiums plus interest, for a total judgment of $13,460.81. From this order, The Governors Club now appeals.

On appeal, Governors Club argues that the trial court erred in finding that a contract for insurance existed between the parties. Governors Club first argues that Miller lacked the authority to enter into the insurance binder on behalf of Governors Club. In addition, Governors Club argues that, even if Miller had such authority, Governors Club was not a party to the agreement.

On the issue of whether Miller had authority to enter into an insurance contract on behalf of Governors Club, "[t]he party alleging an agency relationship and the scope and effect of an agent's apparent authority, bears the burden of proving such allegations to the trier of fact." ***Durham v. Waddell & Reed, Inc.***, 723 S.W.2d 129, 131 (Tenn. Ct. App. 1986). On appeal, the trial court's findings on the existence and extent of an agency relationship is subject to de novo review with a presumption of the correctness of the factual finding unless a preponderance of the evidence is otherwise. ***See*** Tenn. R. App. P. 13(d).

Here, the trial court below found that Miller possessed apparent or ostensible authority to enter into the insurance binder on behalf of Governors Club. Apparent authority is defined as:

. . . such authority as the principal knowingly permits the agent to assume or which he holds the agent out as possessing; such authority as he appears to have by reason of the actual authority which he has; such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess.

***Rich Printing Co. v. McKellar's Estate***, 330 S.W.2d 361, 376 (Tenn. Ct. App. 1959) (quoting ***S. Ry. Co. v. Pickle***, 197 S.W. 675, 677 (Tenn. 1917)). Apparent authority must be established through the acts of the principal rather than those of the agent. ***Bells Banking Co. v. Jackson Centre, Inc.***, 938 S.W.2d 421, 424 (Tenn. Ct. App. 1996). Governors Club argues that it made no representations

to Gale Smith which could lead a reasonably prudent person to believe that Miller had the authority to enter into a binding contract on its behalf.

A general agent appointed to transact business on the principal's behalf will usually possess the authority to carry out those acts which are commensurate to his position. Thus, this Court has held:

> It may not be unreasonably presumed, where nothing is indicated to the contrary, that such an agent possesses those powers which are commensurate with his undertaking, and which are usually and properly exercised by other similar agents under like circumstances. This presumption may well be and is constantly relied upon by persons dealing with such agents, and so reasonable, proper and necessary is this reliance, that it may justly be required that if the principal would impose unusual restrictions upon the authority of such an agent, he should make them known to persons who may have occasion to deal with the agent.

*O'Shea v. First Fed. Sav. & Loan Ass'n of Columbia*, 405 S.W.2d 180, 183 (Tenn. 1966). Thus, while an agent's authority may be limited by the direction of his principal, if the other party to the contract is not made aware of that limitation, he may nevertheless rely on the agent's apparent authority to take those actions which are commensurate with his position. *Id.*; *see also Corbitt v. Fed. Kemper Ins. Co.*, 594 S.W.2d 728, 735 (Tenn. Ct. App. 1980).

In this case, it is undisputed that, prior to July 30, 1999, Miller was the manager and developer of the Golf Club. Therefore, his apparent authority would extend to all acts and undertakings commensurate with that position unless otherwise communicated to the other contracting party. Hester testified at trial that he believed that "David Miller was The Governors Club" and, that therefore, Miller had the authority to bind Governors Club to the insurance contract. Miller testified at trial that his authority at the time he entered into the agreement with Gale Smith was limited in that "he had to submit all bills to a third party before he could pay the bills." The record, however, includes no evidence that Gale Smith was informed of any limitations on Miller's authority prior to entering into the agreement. Under these circumstances, we cannot conclude that the evidence preponderates against the trial court's finding that Miller had ostensible or apparent authority to enter into the contract on behalf of Governors Club.

Governors Club next argues that the trial court erred in finding that it was a party to the written insurance binder. "The interpretation of a written agreement is a matter of law and not of fact, therefore, our review is de novo on the record with no presumption of the correctness of the trial court's conclusions of law." *NSA DBA Benefit Plan, Inc. v. Conn. Gen. Life Ins. Co.*, 968 S.W.2d 791, 795-796 (Tenn. Ct. App. 1997). In construing an insurance contract, "the paramount rule . . . is to ascertain the intent of the parties. That intent is to be derived from the four corners of the policy giving effect to all parts. However, where the policy is ambiguous, the intent of the parties may be derived from extrinsic evidence outside the policy." *Blue Diamond Coal v. Holland-Am. Ins. Co.*, 671 S.W.2d 829, 833 (Tenn. 1984) (citations omitted).

Governors Club asserts that the only named insured under the binder was Cornerstone. Governors Club additionally asserts that the realtors who worked at Governors Club were employed by Shirley Zeitlin and Associates and the maintenance staff was employed by Cornerstone. Therefore, Governors Club "had no need for worker's compensation insurance because it had no employees." Governors Club contends that this evidence establishes that Cornerstone was the party to the insurance contract and not Governors Club.

However, in addition to listing Cornerstone as the insured, the binder's "Special Conditions/Other Coverages" section lists several entities involved in Miller developments, including Governors Club as well as Cornerstone. Hester testified at trial that, in issuing the insurance binder, "we bound all David Miller entities on June 15, 1999." As to the worker's compensation policy, the trial court found that, in entering into the agreement, "Miller made no distinction between employees that worked for the Governors Club LLC and related entities and those who worked for Cornerstone Management Company, which managed the Governors Club properties." From this evidence, we must conclude that it is ambiguous whether the parties intended to bind Governors Club under the insurance binder.

In a case involving an ambiguity in an insurance contract, the court should "attempt to construe [the] insurance contract[] so as to provide coverage."[2] *Alcazar v. Hayes*, 982 S.W.2d 845, 852 (Tenn. 1998); *see also Planet Rock, Inc. v. Regis Ins. Co.*, 6 S.W.3d 484, 490 (Tenn. Ct. App. 1999). The principle of construing an insurance contract to provide coverage should be applied evenhandedly, regardless of whether the insured or the insurer seeks to enforce the contract. In this case, if Governors Club were suing in order to obtain insurance coverage, we would undoubtedly conclude that the insurance policy was enforceable. The policy should be no less enforceable against Governors Club. Under these circumstances, we find no error in the trial court's finding that an agreement for insurance existed between the parties.

The decision of the trial court is affirmed. Costs of this appeal are taxed to the appellant, The Governors Club, L.L.C., and its surety, for which execution may issue, if necessary.

_____
HOLLY KIRBY LILLARD, JUDGE

---

[2]In the majority of cases, the insured seeks to enforce the insurance contract in order to obtain coverage, rather than the insurance company seeking to enforce the contract in order to obtain payment of premiums.