IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
MAY 17, 2004 Session

## ST. PAUL REINSURANCE CO., LTD. v. ROBERT WILLIAMS and SHERROD JACKSON, Individually and d/b/a PURE PASSION; PURE PASSION, INC. and EUGENE PUGH

Direct Appeal from the Chancery Court for Shelby County
No. CH-02-0038-I     Walter L. Evans, Chancellor

No. W2003-00473-COA-R3-CV - Filed August 25, 2004

This case arises from events surrounding the shooting death of Decedent, Appellant's son. Appellee filed a motion for summary judgment claiming its policy of insurance did not apply to the circumstances of this case because Appellant's claim was specifically excluded from the insurance policy. The trial court granted Appellee's motion for summary judgment and, for the following reasons, we affirm.

Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Ron W. McAfee, Memphis, TN, for Appellant

Gary H. Nichols, Jeffrey L. Lay, Dyersburg, TN, for Appellee

**OPINION**

**Facts and Procedural History**

On August 19, 2000, Rodney Pugh ("Pugh" or "Decedent") was a patron at a nightclub in Shelby County, Tennessee, named Pure Passion. Pugh became involved in an altercation with other unknown patrons of Pure Passion. One of those individuals had a firearm and shot Pugh multiple times in the abdomen. Pugh died as a result of the gunshot wounds.

Subsequently, on August 16, 2001, Eugene Pugh ("Appellant"), Decedent's father, filed a complaint, seeking compensatory and punitive damages, against Robert Williams and Sherrod

Jackson individually and d/b/a the Pure Passion Club. On January 7, 2002, St. Paul Reinsurance Company ("Appellee") filed a complaint for a declaratory judgment, seeking a decree that the commercial general liability policy issued to Pure Passion ("insurance policy") excluded the nature of Appellant's claim from coverage and that Appellee had no duty to defend or indemnify Pure Passion.

The insurance policy between Appellee, as insurer, and Pure Passion, as insured, with an effective period of coverage from August 3, 2000, to August 3, 2001, provides, in pertinent part:

Section I - Coverages

Coverage A. Bodily Injury And Property Damage Liability
1. Insuring Agreement.

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies. We will have the right and duty to defend any suit seeking those damages. We may at our discretion investigate any "occurrence["] and settle any claim or suit that may result.

...

c. Damages because of bodily injury include damages claimed by any person or organization for care, loss of services or death resulting at any time from the bodily injury.

Under the insurance policy's list of exclusions, it states the following:

Exclusion - Assault and Battery / Negligent Hiring

Notwithstanding anything contained herein to the contrary, it is understood and agreed that this policy excludes claims arising out of;

1. Assault and Battery, whether caused by or at the instructions of, or at the direction of or negligence of the insured, his employees, patrons or any causes whatsoever and

2. Allegations of negligent act or omission by or on behalf of the Insured in connection with hiring, retention or control of employees, supervision or prevention or suppression of such assault and battery.

Finally, the insurance policy excludes coverage for punitive or exemplary damages:

Exclusion - Punitive Or Exemplary Damage

The following exclusion is added to Coverages A, B, and C (Section I):

This insurance does not apply to a claim of or indemnification for punitive or exemplary damages. If a suit shall have been brought against you for a claim within the coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then we will afford a defence for such action. We shall not have an obligation to pay for any costs, interest, or damages attributable to punitive or exemplary damages.

Appellee filed a motion for summary judgment, an amended motion for summary judgment, a memorandum in support of such motion, and a statement of undisputed facts. After a hearing on September 6, 2002, the trial court found that the insurance policy does not provide coverage for the subject matter of Appellant's lawsuit. Therefore, the trial court granted Appellee's motion for summary judgment. After the trial court denied Appellant's motion to alter or amend the judgment, Appellant filed an appeal with this Court and presents the following issue for our review: whether the insurance policy provides coverage pursuant to the "concurrent causation doctrine" for the shooting death of Rodney Pugh. For the following reasons, we affirm the decision of the trial court.

## Standard of Review

This Court has previously articulated the standard by which we must review this issue on appeal:

We do not find a material factual dispute. Questions involving an insurance policy's coverage and an insurer's duty to defend require the interpretation of the insurance policy in light of claims asserted against the insured. *Standard Fire Ins. Co. v. Chester-O'Donley & Assoc., Inc.*, 972 S.W.2d 1 (Tenn. App. 1998). The issues relating to the scope of coverage and an insurer's duty to defend present questions of law which can be resolved by summary judgment when the relevant facts are not in dispute. *Id*. at 5-6. Summary judgment may be granted only when there are no genuine material factual disputes with regard to the claim or the defense asserted in the motion, and when the moving party is entitle[d] to a judgment as a matter of law. Tenn. R. Civ. P. 56.03; *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993).

*Planet Rock, Inc. v. Regis Ins. Co.*, 6 S.W.3d 484, 490 (Tenn. Ct. App. 1999).

## Law and Analysis

Appellant argues that Appellee should not have been granted summary judgment even though the insurance policy contains an assault and battery exclusion. Specifically, Appellant argues that a "concurrent cause," the negligence of Pure Passion's employees in maintaining a secure environment, contributed to the Decedent's death.

The "concurrent causation doctrine" was first recognized by this Court in the unpublished decision *Almany v. Nationwide Insurance Company*, No. 85-341-II, 1987 Tenn. App. LEXIS 2460, at *23-25 (Tenn. Ct. App. January 29, 1987). Such doctrine provides that "coverage under a liability policy is equally available to an insured whenever an insured risk constitutes a concurrent proximate cause of the injury." *Almany*, 1987 Tenn. App. LEXIS, at *24. Concurrent causation was recognized and approved by the Tennessee Supreme Court in *Allstate Insurance Company v. Watts*, 811 S.W.2d 883, 887 (Tenn. 1991) (holding "there should be coverage in a situation . . . where a nonexcluded cause is a substantial factor in producing the damage or injury, even though an excluded cause may have contributed in some form to the ultimate result and, standing alone, would have properly invoked the exclusion contained in the policy.").

In *Watts*, Dewey Crafton, the insured, was assisting Joseph Cole in replacing the brake shoes on Cole's truck in Crafton's garage. *Watts*, 811 S.W.2d at 884. Crafton and Cole had difficulty removing the lug nuts from one of the truck's wheels. *Id*. Bobby Watts, a friend of Crafton's, coincidentally stopped by Crafton's home and offered to use a welding torch he had in his vehicle to remove the lug nuts. *Id*. Before using the welding torch, Watts inquired whether there were any flammable materials present in the garage to which Crafton responded in the negative. *Id*. When Watts could not remove the lug nuts with the torch, Crafton asked Watts to cut the bolt off with the torch. *Id*. Watts did so and, as the bolt was being cut, sparks scattered over the garage floor and ignited a pan of flammable liquid under the truck. *Id*. at 884-85. Crafton picked up the pan, walked to the open garage door, but dropped the pan due to the heat and inadvertently kicked it. *Id*. at 885. As a result, flammable liquid splashed onto Watts, causing burns. *Id*.

Crafton's homeowner insurance policy with Allstate Insurance Company provided that "[Allstate does] not cover bodily injury or property damage arising out of the ownership, maintenance, use, occupancy . . . loading or unloading of any motorized land vehicle or trailer." *Id*. at 884. Allstate argued that the insurance policy did not cover the injury to Watts because the circumstances surrounding Watts' injury involved the maintenance of Cole's truck and the language "arising out of" was sufficiently broad to mean any causal relationship, relying on the "chain of events" theory of application. *Id*. at 885, 887. The court recognized that the use of the welding torch to perform maintenance on Cole's truck was an excluded risk under the policy. *Id*. at 888. However, the court determined that other causes–the placement of the pan of flammable substance on the garage floor, Crafton's failure to warn Watts of the presence of the flammable substance, and Crafton's negligence in dropping and kicking the burning substance–were not excluded by the insurance policy, and, therefore, Allstate should provide insurance coverage when these other causal factors "played a substantial role in producing the loss complained of by Watts." *Id*. (citing *Travelers Ins. Co. v. Aetna Cas. & Sur. Co.*, 491 S.W.2d 363, 367 (Tenn. 1973)). Therefore, the court found in favor of Watts and held that "an insuror should not be excused from its obligation under a homeowner's policy unless it has been determined that the loss being complained of did not result in substantial part from a risk for which it provided coverage and collected a premium." *Id*. at 888.

This Court later addressed "concurrent causation" in *Planet Rock, Inc. v. Regis Insurance Company*. In *Planet Rock*, Craig Williams, a patron of Planet Rock, had an altercation with Benjamin Blackwell, another patron of the club. *Planet Rock, Inc. v. Regis Ins. Co.*, 6 S.W.3d 484, 485 (Tenn. Ct. App. 1999). After taking the argument outside, Williams and Blackwell began fighting and Williams was knocked unconscious. *Id.* Planet Rock employees brought Williams back into the club and put him on a couch in one of the club's offices. *Id.* When Planet Rock's employees checked on Williams some time later, he had died from his injuries. *Id.* Williams' parents sued Planet Rock, seeking damages under a theory of wrongful death. *Id.* at 485-86. Specifically, the parents alleged that Planet Rock undertook the medical care of Williams in a grossly negligent manner. *Id.* at 486.

Planet Rock held an insurance policy with Regis Insurance Company. When Regis denied Planet Rock coverage pursuant to an assault and battery exclusion and Williams' parents received a judgment in their favor against Planet Rock, Planet Rock, for the use and benefit of Williams' parents, filed a lawsuit against Regis. *Id.* at 486-88. In the insurance policy with Regis, the policy provided that:

> Actions and proceedings to recover damages for bodily injuries or property damage arising from the following are excluded from coverage . . . [a]ssault and [b]attery or any act or omission in connection with the prevention or suppression of such acts [and] [h]armful or offensive contact between two or among two or more persons . . . .

*Id.* at 488. In *Planet Rock*, this Court affirmed the order of the trial court granting summary judgment to Planet Rock, Inc., which found that the negligent act of failing to make available the appropriate medical care was covered, not excluded, by the insurance policy with Regis. *Id.* at 489, 493.

In the instant case, Appellant contends that the claim against Pure Passion–negligence in failing to provide security and a safe and secure premises–is a concurrent cause which is not excluded by the insurance policy. Relying on *Watts* and *Planet Rock*, Appellant argues that this Court should reverse the grant of summary judgment to the Appellee. We disagree. Unlike *Watts* and *Planet Rock*, this case involves a claim which is excluded by the insurance policy. In *Watts*, the nonexcluded causes were the placement of the pan of flammable substance, Crafton's failure to warn Watts of the presence of the flammable substance, and Crafton's negligence in dropping and kicking the burning substance. *Watts*, 811 S.W.2d at 888. In *Planet Rock*, the nonexcluded cause was the insured's failure to render or make available the appropriate medical care. *Planet Rock*, 6 S.W.3d at 489, 493. However, in this case, the claim alleged by Appellant against Pure Passion is excluded by the language of the assault and battery exclusion in the insurance policy. Such policy excludes from coverage claims arising out of "[a]ssault and [b]attery, whether caused by or at the instructions of, or at the direction of *or negligence of the insured, his employees*, patrons or any causes whatsoever." (emphasis ours). Additionally, the policy excludes claims arising out of "[a]llegations of *negligent act or omission by or on behalf of the [i]nsured in connection with* hiring, retention or

control of employees, *supervision or prevention or suppression of such assault and battery*." (emphasis ours). In this case, the Appellant's claim falls within the exclusions articulated in the insurance policy, and, therefore, the "concurrent causation doctrine" should not apply to Appellant's claim. For this reason, we affirm the grant of summary judgment in favor of Appellee.

### Conclusion

For the foregoing reasons, we affirm the decision of the trial court. Costs of this appeal are taxed to Appellant, Eugene Pugh, and his surety for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE